BRILL v. THIRD AVE. R. CO.

(Circuit Court, S. D. New York. July 9, 1900.)

1. PATENTS—ANTICIPATION—PRIOR PATENT.

A patent for a mechanical combination is not anticipated by a drawing in a prior patent which incidentally shows a similar arrangement of parts, where such arrangement is not essential to the first invention, and was not designed, adapted, or used to perform the function which it performs in the second invention, and where the first patent contains no suggestion of the way in which the result sought is accomplished by the second inventor.

2. SAME—VALIDITY AND INFRINGEMENT—SUPPORTS FOR STREET-CAR BODIES.

The Brill patent, No. 478,218, for an improvement in car trucks, designed to prevent the oscillation or "galloping" movement of a street-car body incident to its being supported on a comparatively short wheel base, was not anticipated, and shows patentable invention, as to the combinations covered by claims 1, 2, 9, 10, 11, 12, 14, and 27, but not as to that shown in claim 17. Also *held* infringed as to such valid claims.

## In Equity. Suit for infringement of a patent. On final hearing.

This bill in equity is based upon the infringement of claims 1, 2, 9, 10, 11, 12, 14, 17, and 27 of letters patent No. 478,218, applied for June 26, 1891, and issued on July 5, 1892, to George Martin Brill, for an improvement in car trucks. Although the patentee conceived the idea of the invention of claims 1 and 2 in May, 1889, and made rough sketches of it, he laid it aside, and did not take it up again until November, 1890. He made drawings in December, and completed the trucks containing the whole invention in January, 1891. The date of the invention may be considered to have been December 8, 1889. These claims are as follows: "(1) In a motor truck, the combination, with a stationary frame supported upon the running gear, said frame having sections extending outwardly from the axle, of a movable frame supported upon said truck, spiral springs located between the movable and stationary frames, and elliptical springs located between the extended sections of the said rigid frame and the movable frame, substantially as described. (2) In a truck, a spring-supporting frame supported upon the running gear by saddles, and having sections extending outwardly from the axles, a movable frame having like extensions, spiral springs located between the saddles and movable frame, and elliptical springs located between the spring-supporting frame and the movable frame, substantially as described." "(9) In a truck, the combination of two frames, one stationary and supported upon the running gear, the other movable, and a plurality of springs located between the stationary and movable frames, some of said series being adapted to be compressed by the downward movement of said movable frame subsequent to the compression of other of the series, substantially as described. (10) In a truck, the combination of two frames, one stationary and supported upon the running gear of the truck, the other adapted to be moved towards said stationary frame, springs located between the ends of both frames, and springs otherwise disposed between the two frames, the end springs being adapted to be compressed subsequent to the compression of the other springs, substantially as described. (11) In a truck, a stationary spring-supporting frame having at its ends elliptical springs rigidly secured thereto, in combination with a movable frame supported by springs other than said elliptical springs, said movable frame being provided with devices for engaging said elliptical springs, the elliptical springs being adapted to be brought into action subsequent to the springs supporting the movable frame, substantially as described. (12) In a truck, a spring-supporting stationary frame mounted on the running gear of said truck, said frame being composed of a plurality of bars contiguously disposed, a saddle secured to the outer sections of said bars, an elliptical spring, the lower section of which rests upon said saddle, and a second saddle disposed over the first and the spring and secured to the first saddle, a movable frame, spring supported upon the stationary frame, and having devices for guiding the upper section of the elliptical spring, substantially as described." "(14) A truck having running gear and a frame, and spiral springs for supporting the car body, supplemented by elliptical springs adapted to co-act therewith, the spirals being adapted to be compressed prior to the ellipticals, substantially as described." "(17) The upper chord having the depending cap, 45, with downwardly extending legs, 46, and elliptical springs held on the side beams, adapted to move in said cap substantially as described." "(27) In a truck, a stationary spring-supporting frame mounted on the running gear of said truck, having outwardly extending sections and elliptical springs secured to the stationary frame, and a movable frame, spring supported upon the said stationary frame, having a device for guiding the upper portion of the elliptical springs, substantially as described." One hundred and eighty-one infringing

trucks were purchased by the defendant from the Bemis Car-Box Company of Springfield, Mass., which it is admitted "is defending the present suit for the Third Avenue Railroad Company."

Francis Rawle, Frederick P. Fish, and Joseph L. Levy, for complainant.

Arthur v. Briesen, for defendant.

SHIPMAN, Circuit Judge (after stating the facts). After electricity was substituted upon city railroads as a motive power to move cars formerly drawn by horses, the railroad corporations were subjected to great expense, and the passengers to severe inconvenience, in consequence of the oscillation of the cars from end to end, or "galloping" motion as it was called. The horse cars were 16 feet long, and had a wheel base or distance between the two pairs of wheels of 6 to 7½ feet. The new electric cars were from 18 to 22 feet long, but, in consequence of the short radii of curves in city streets where cars turn from street to street, it was necessary to keep the wheel base about as short as before to enable the car to pass around the curves, and therefore the car body was longer than the truck, and overhung it. The result was that these overhanging and unsupported ends oscillated, pounded the rails, strained the trucks, and caused discomfort, and, on heavily laden open cars, danger to the passengers. The patentee says in his specification:

"The main object of my invention is to enable a truck of comparatively short wheel base to be used, and to support a car body upon it, the ends of which overhang the truck for some distance. My invention is also intended to overcome in a measure the end vibration or oscillation of the car body and movable portion of the truck to which the car is secured."

In the patented structure a pair of rigid longitudinal side beams, which derive their support from the axle boxes, extend lengthwise of the truck beyond the wheels at each end, and are called the "independent frame." At each side of each beam a spiral spring is interposed between the beam and the spring plates upon which the car body rests, and to which it is rigidly secured. These spring plates are secured to a rectangular frame called the "movable portion" of the truck. At each side of the car there are two spring plates and four spiral springs, two between each plate, and corresponding longitudinal beam or saddle, thus making a set of eight springs, called "axle-box springs." These springs, supported as they are upon a space equal to the length of the wheel base, cannot firmly support a car body of the length of the ordinary trolley car, and a multiplication of spiral springs between the wheels and the end of the car was also inadequate. The gist of the invention consisted in combining with the frames of the truck and the spiral springs another class of springs, viz. elliptical springs, between the car body and the extensions of the independent frame. The elliptical springs are slower in their action than the spiral springs, and neutralize the longitudinal oscillation of the car body. Mr. Akarman, a practical trolley railroad superintendent, stated the result and the reason of it as follows:

"From a practical observation my opinion is that the combination of an elliptic and spiral spring as applied in trucks of this type breaks the rhythm of motion, or interrupts it. In trucks with all spiral springs, or I should think,

if it were possible to construct, a truck having all elliptic springs, the rhythm of motion is perfect; the springs acting in unison. In the truck, as previously described, having the combination of elliptic and spiral springs, the rhythm is broken, and the result is that the galloping or rocking motion was done away with."

This leading feature of the invention is described in claims 1 and 2, which do not contain the limitations of the invention described in the next paragraph. A second and minor feature of the invention, described in claims 9, 10, 11, and 14, is such an arrangement of the elliptical springs with the car body that they "will not come into play until after the axle-box springs have begun to compress, and the action of the spiral springs in lifting the car body is continued after the elliptical springs have ceased to act." The elliptical springs are not depressed until the car body, or one end of it, has become depressed by the weight of the passengers, or some other cause, when this slower motion interposes, and checks the continuation or increase of oscillation. A third and more subordinate feature of the invention is described in claims 12, 17, and 27, and consists in the construction by which the elliptical springs are engaged with the independent frame of the truck and car body. One feature of this construction is that, as described by the complainant's expert, the "upper member of the spring is not positively connected with the movable portion of the truck, but the latter is provided with a 'cap' or bearing piece secured to the under side of the upper chord of the movable portion, said cap having downward extending projections or legs at each side of the upper member of the elliptical spring, which confine the spring in proper position under the cap, while permitting of independent vertical movement of the bearing plate and spring, so that the former may, if necessary, rise clear of the spring." The invention, as a whole, attracted the immediate attention of railway superintendents, was found to accomplish its object, and to be almost a complete remedy; and trucks having spiral springs next to the axle boxes and elliptical springs on the extensions of the truck frame have been universally adopted.

Upon the question of the novelty of the invention described in claims 1, 2, 11, 12, and 14 the defendant's expert puts great stress upon letters patent No. 409,993, dated August 27, 1889, to Benjamin F. Manier. One object of Manier was to prevent oscillation, and to accomplish it he employed an extended spring base, and mounted the body springs forward of the axles. He said that oscillation was noticeable in cars mounted on trucks wherein the body springs are on both sides of the axles, and near the center of the truck, and that the mounting of the body springs forward of the axles he considered a special feature of his invention. The springs, or the kind of springs, which he was to use, are no part of his invention. He says:

"Preferably I employ spiral springs, G, as shown in Fig. 1, for supporting caps, I; but, if desired, the elliptic springs, H, could be employed, as shown in Fig. 3, or other forms of springs may be used, as found convenient and desirable; the particular form of spring not forming part of present invention."

Manier's invention was entirely apart from that of Brill, and had no conception of its character. The only ground upon which the expert can place his theory is that in Fig. 3 the two different forms of springs,

spiral and elliptical, are shown, and upon this drawing the entire super-structure of anticipation is built. Manier's invention was not designed, nor adapted, nor used for the performance of the function performed by Brill's device, nor was the way to accomplish Brill's result suggested by Manier's invention. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658.

In regard to claims 9, 10, 11, and 14, the defendant's expert did not find in the prior art a combination which included the feature of the compression of the spiral springs prior to the action of the elliptical springs, or a provision for bringing those springs into action subsequent to the springs supporting the movable frames; but, as claim 9 refers to a plurality of springs, he finds that claim to have been anticipated by the patent to Horace G. Bird (No. 436,031) of September 9, 1890, and also that the terms of claim 10 were anticipated by the patent to John Diehl (No. 396,272) of January 15, 1889. The Bird structure had one set of springs between the axle boxes and the intermediate frame, and another set between this frame and the car body, all of these springs being spiral; and, as the different sets were of different strength, the patentee thought that by the inequality of their vibrations the oscillation of the car body would tend to neutralize that of the truck, and, as a result, excessive lengthwise rocking motion would be obviated. No substantial difference in the time of compression was intended, but there would be a difference in the amount of compression, which would be greater in the lighter springs. The Diehl patent is for springs for a vehicle, and consists of a bar, a single semielliptical lengthwise spring secured to the central portion of the bar, and two spiral springs of different lengths, arranged to depend from each end of the bar, whereby one of the spiral springs is always in contact with the semielliptical spring. Supplemental spiral springs are adapted to be brought into action after the main spiral springs have been excessively compressed. Neither of these patents relates to the invention of Brill, which was described in his specification. The Diehl patent has no relation to the invention as described in claim 10, and neither does the Bird patent touch the invention as stated in claim 9, although each of those claims, if read literally, and not in accordance with the invention as described in the specification, is liable to the charge of being too broad. They should be construed in accordance with the invention as described in the specification, for the combination with the other named elements of spiral springs and elliptical springs located between the frames as described. The defendant's expert referred also to the Brill patent, No. 357,811, and the Richard Vose patents for rubber center spiral springs or metallic spiral springs, Nos. 199,945, 347,281, and 350,174. The Brill patent is unimportant in this connection, and the Vose patents relate simply to spiral springs which act successively under compression.

In regard to claims 17 and 27 the defendant's expert was unable to point to anything in the prior art which contained the particular construction or the elements of those claims. The expert referred in his direct examination only to the Manier, Bird, Diehl, Brill, and Vose patents "as showing most clearly constructions which I [he] considered as the best anticipations of the alleged invention of the patent in suit,

and particularly to the subject-matter of claims 1, 2, 9, 10, 11, 12, 14, 17, and 27." His attention was afterwards called by the defendant to 19 other patents, and in regard to which he testified. Four of them were issued after the date of the Brill application. The remaining 15 have no bearing upon the question of anticipation, and were commented upon probably to have an effect upon the question of invention. I do not think that any of them calls for remark except the Edgar Peckham patent, No. 419,876, dated January 21, 1890. In this car truck, between the end portions of the lower beams and the car sill, suitable springs were interposed, either spiral springs or a semielliptical spring, which was disposed transverse to the car body and rests with each end secured to the top of the lower beam. The upper beams are supported on spiral springs on the axle boxes. This construction, although it contains the name "semielliptical spring," has not the conjoint action of the patented combination, nor does it perform the function of the Brill device.

The contest in regard to infringement related to claims 9, 10, 11, and 14, the controversy being whether the elliptical springs in the defendant's trucks were so arranged with reference to the car body that the weight came upon them as soon as it came upon the spiral, so that there was no compression of the spirals before the weight began to come upon the ellipticals. The defendant offers testimony in support of this theory, but, in view of the strength of the affirmative testimony offered by the complainant upon the issue of infringement, it was inadequate. A very intelligent carpenter, who helped to ship the trucks in question from Springfield to New York, testified that both classes of springs began to be compressed at the same time, and was undoubtedly honest in his opinion; but the strength of the testimony is that when the trucks first came to New York, and the car bodies were put in place, the spiral springs carried the weight of the body, and the ellipticals were a re-enforcement to carry the passenger weight. It is noticeable that the managers of the Bemis Company, and those officials who made the plans and constructed the trucks, and could have described and shown the plan of construction upon which their trucks were made, did not testify on this point.

The only remaining question is that of patentable novelty. It has already appeared that the gist of the invention is described in claims 1 and 2. The necessity for a remedy against the pounding of the car, the importance of the result, the adoption of the invention by experienced railway superintendents, the number of previous attempts at a remedy, and the barrenness of their results, go far to show that the work of an inventive mind was required and was active in the invention. The testimony of the defendant's expert himself, as he goes through the history of the art, and thereby points out what the patentee's combination did, as compared with previous efforts to do something, shows that the patented improvement was patentable. The result of the minor invention of claims 9, 10, 11, and 14 was important, though upon first inspection its marked importance does not appear, but it perfected the general invention of the first two claims. The combination shown in claims 12 and 27 was patentable. The simple combination in claim 17 of the upper chord with its depending cap

and downwardly extended legs and elliptical springs does not appear to me to have been patentable.

Let there be a decree, with costs, for an injunction against the infringement of claims 1, 2, 9, 10, 11, 12, 14, and 27, and for an accounting if it is asked for.