## In re DANIEL.

Court of Customs and Patent Appeals.
October 4, 1929.

Patent Appeal No. 2125.

See, also, 34 F.(2d) 994.

Vernon E. Hodges and J. Preston Swecker, both of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge. This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the action of the Examiner in rejecting claims 1, 2, and 3 of applicant, and also rejecting claim 4 which was admitted for purpose of appeal by the Board and rejected in its decision.

The subject-matter of the application is a claimed device or mechanism for improved curtain shade rollers, and the claims involved in this appeal are as follows:

"1. The combination with a curtain-shade roller and a curtain shade and cord, said shade and cord secured to and adapted to wind on the roller in opposite directions, of a bracket or fixture forming, in a single piece, a closed, round bearing for the roller and a guide for the cord, and rotatable means carried by the bracket between which and the bracket the cord passes and is adapted to be pinched when directed laterally to a predetermined position, the cord being free and disconnected from the point where it leaves the rotatable means, so that its manipulation is at all times entirely within the control of the operator.

"2. A device of the character described including a curtain-shade, and a roller, having a round pintle, and provided with a reel at one end and a cord attached to the reel and adapted to wind thereon, and a bracket having an integral bearing formed to fit the pintle of the roller and a pair of integral ears in planes parallel with the bearing, a stop-pulley rotatably mounted in said ears to turn on an axis parallel with the axis of the curtain-shade roller, said stop-pulley having grooves therein, and between which and the bracket the cord on the reel extends, certain of said grooves being adapted to guide and clamp the cord, the curtain and cord being wound around the roller and reel in opposite directions, the cord being wound to roll up the curtain, and the curtain being un-

rolled by releasing and slackening the tension of the cord.

"3. The combination with a curtain-shade roller and a curtain-shade and cord, said shade and cord secured to and adapted to wind thereon in opposite directions, of a bracket or fixture forming a bearing for the roller and a guide for the cord, located above the roller, and rotatable means carried by the bracket to which the cord extends directly from the roller, and between which and the bracket the cord passes and is adapted to be pinched when directed laterally to a predetermined position thereon, the cord being free and disconnected from the point where it leaves the rotatable means, so that its manipulation is at all times entirely within the control of the operator.

"4. The combination with a curtain-shade roller and a curtain shade and cord, said shade and cord secured to and adapted to wind thereon in opposite directions, of a bracket or fixture forming a bearing for the roller and a guide for the cord, and rotatable means carried by the bracket to which the cord extends directly from the roller, and, between which and the bracket the cord passes and is adapted to be pinched when directed laterally to a predetermined position thereon, the cord being free and disconnected from the point where it leaves the rotatable means, so that its manipulation is at all times entirely within the control of the operator."

The first decision of the Board of Appeals, rendered June 30, 1927, involved only the first three claims, and was as follows:

"This is an appeal from the decision of the examiner in finally rejecting the three claims in this application. Claim 1 is given here as an example.

" 'The combination with a curtain-shade roller and a curtain shade and cord, said shade and cord secured to and adapted to wind on the roller in opposite directions, of a bracket or fixture forming, in a single piece, a closed, round bearing for the roller and a guide for the cord, and rotatable means carried by the bracket between which and the bracket the cord passes and is adapted to be pinched when directed laterally to a predetermined position, the cord being free and disconnected from the point where it leaves the rotatable means, so that its manipulation is at all times entirely within the control of the operator.'

"The references relied upon are: Truemper, 264,206, Sept. 12, 1882; Dawson, 1,-181,852, May 2, 1916.

"Claim 1 reads directly on the patent to Truemper except that it specifies that the bracket is 'in a single piece' and that it has 'a closed round bearing for the roller.' There is also a statement that the cord is 'free and disconnected from the point where it leaves the rotatable means.' It is well established in the decisions of the courts that there is ordinarily no invention in making in a single piece what has before been made in two, and the limitation to a bracket 'in a single piece' cannot make the claim allowable. There is nothing novel in making a round bearing for the pintle of a curtain roller, see the ordinary brackets in general use. In Truemper the pull on the curtain roller is downward so that the pintle cannot rise in the slot e which is made open so that the roller can be readily removed from the bracket. In the reference, the cord J would be 'free and disconnected' if the switching arm K were omitted and there is no necessity for using it if one were willing to dispense with its function. It is merely an additional element to do automatically what appellant must do manually. This claim is not limited to locating the locking device above the curtain roller nor to making the bracket of sheet metal nor does it specify any particular construction of the bracket except the round bearing. We are unable to find anything patentable in the claim over the reference.

"Claim 3 is like claim 1 except that it locates the locking device 'above the roller' and claim 2 is a little more specific than claim 1 as to the ears for pivoting the locking device. The examiner cited the patent to Dawson to show a cord guide above the roller and a sheet metal bracket similar to that of the application and held that in view thereof there would be nothing inventive in mounting Truemper's locking roller in such a bracket. We find that this Dawson patent has been reissued as No. 14,375, Oct. 9, 1917, and assigned to the Cunningham Springless Shade Co. who are also the owners of the reissue application which is before us on appeal. This reissue patent shows in Fig. 5, a bracket identical with that of the present case, so far as the cord guide is concerned, and it has downturned ears in which a guide roller is pivoted. If the guide roller of Truemper were substituted for the plain roller of Dawson, the entire structure disclosed by appellant would be produced. In view of this Dawson patent we see no invention in using Truemper cam roll above the curtain roller, as specified in claim 3.

"We agree with the examiner that the claims are not patentable over the references, and the decision of the examiner is affirmed."

Following this decision applicant on August 2, 1927, filed a petition for rehearing, alleging surprise by the citation by the Board of Appeals of the Dawson reissue patent of October 9, 1917, No. 14,375, same being a reissue of an earlier Dawson patent, No. 1,181,852.

The drawings accompanying the Dawson reissue, No. 14,375, showed a Figure 5 which was not disclosed in the original, No. 1,181,852, and it was insisted that the Board of Appeals based its decision, affirming the rejection of applicant's claims by the Examiner, in part at least, upon this additional Figure.

It was and is further insisted, first, that there is a very material difference between the two; and, second, that the Figure 5 in the Dawson reissue drawings was "inserted as an afterthought and while the application for the reissue was pending" and "should not be regarded as a reference or publication and certainly not as an anticipation" of applicant's claim of invention; and request was made to insert an additional claim.

This request was granted, and the additional claim appears as claim 4, supra. After the record had been so made up, on August 31, 1927, there was a review by the Board of Appeals of the application as amended. In this second decision the Board said:

"In our decision of June 30, 1927, on this appeal we cited the reissue patent to Dawson, No. 14,375, which was not then of record in the case. The appellant asks for reconsideration in view of this citation, as provided for in Rule 139, and also requests entry and consideration of an additional claim.

"We have carefully considered the case in view of the petition and do not see any reason for changing our position. The reissue patent was not cited as a basic reference but in Fig. 5 it appears to disclose a specific structure of bracket which was more nearly like that of the application than that shown in the original Dawson patent.

"Our position is that functionally the patent to Truemper discloses the essential elements of appellant's combination of parts and he has merely modified the details of the bracket in view of the Dawson patents which were only cited because of the limitations in claim 2 to the integrality of the ears for supporting the stop pulley and in claim 3 to the location of the stop pulley above the roller. It is held that there is no invention in making the ears $G^1$ $G^2$ of Truemper integral with the roller bracket $E$, especially in view of the ears in Fig. 5 of Dawson's reissue, or in locating the stop roller of Truemper above curtain roller as suggested by the position of the guides of the Dawson patents.

"25. We see no objection to the consideration of the proposed claim, included in the petition for rehearing, for the purpose of the appeal, but we hold that it is unpatentable for the reasons given in connection with claim 1 in our former decision and reiterated in the present decision.

"The decision of the Examiner is affirmed."

It thus appears that both the Examiner and the Board of Appeals hold that no patentable claim is presented by applicant because his several claims present no functional element or elements differing essentially from those disclosed in the prior patents of Truemper and Dawson, referred to in their respective decisions.

It seems necessary that the Court first decide the controversy growing out of the inclusion of Fig. 5 in the drawings accompanying the Dawson reissue patent 14,375, because, while it is stated in the opinion of the Board upon the petition for rehearing, that "the reissue patent was not cited as a basic reference," yet the Figure is a part of the record, and, as we understand the brief and oral argument of the Solicitor for the Patent Office, the reissue is relied upon in this Court along with the original Dawson patent and the Truemper patent, as authority for the affirmation of the decision of the Board of Appeals sustaining that of the Examiner.

It is the insistence of the appellant that Figure 5 in the drawings was inserted as an afterthought, and the Court is cited to the file contents of the reissue application. By permission of the Court the original file, although not a part of the transcript, was received and examined. It apparently bears out the contention of appellant that the Figure was added after an interview between the attorney and the Examiner and following a suggestion of the latter that "the perspective view of the bracket 7 in Fig. 3 fails to do full justice to the construction of the slot 6 which terminates in the lateral pocket." (Original file 167 15 received by the Court and marked as "Appellant's Exhib-

it.") This file also has the cut of a blueprint showing an enlarged figure of the device which appears in the drawings as Fig. 5. As we understand appellant's contention upon this phase of the issue, it is, in substance, that the sole purpose of filing this cut of the blueprint in connection with the reissue application was to clarify or make more vivid the use of slot 6 in bracket 7 as shown in the drawing designated Fig. 3, and it was "overlooked that this blueprint showed more than Dawson's invention in the arm and guide roller carried thereby."

An examination of the specification of the Dawson reissue letters patent discloses that it is stated in lines 98, 99, and 100 (Tr. p. 25) "Fig. 5 is a view in side elevation of the supporting bracket 7." When we closely compare Fig. 3 (which shows fully the bracket 7 in a somewhat front elevation) with Fig. 5, as these appear in the drawings, it is readily evident that Fig. 5 does show more than merely a side elevation of the bracket 7. There is discernable a curved arm 11 extending over the bracket (of which the arm is a part being integrated with it), the arm having ears between which there is apparently a small pulley over which the cord attached to the shade roller below is evidently intended to operate. This part of the mechanism corresponds quite closely with the description given by Daniel in the application at issue in this case where it says: "The bracket preferably has an overhanging arm 9 which terminates in proximity to the reel, and, in the particular form shown, a little over and beyond the vertical plane of the pintle 3." Fig. 5 of Dawson reissue is very similar in appearance to Fig. 6 in the Daniel application drawings, and we understand it to be the contention of appellant's brief that the arm and reel or guide roller shown in the controversial Fig. 5 was the invention of Daniel and not of Dawson.

We infer from this record and an examination of the signatures of the attorney to the official documents that the same attorney appeared before the patent officials and prepared the papers and presented the cause in both claims, and we understand one company to be, or to have been, at the time of their pendency in the Patent Office, the owner of rights in both claims. This fact, while having no bearing upon the law of the case, aids in understanding the appearance of drawings very similar without there having been correspondingly similar claims.

We think the contention of appellant that "there is no suggestion in any of the claims of the Dawson patent of ever attempting to cover the upwardly extending arm 11 shown in the reissue patent in the form" (Fig. 5) "there illustrated," borne out by the record. An examination of the Dawson claims in the application for reissue discloses no language which to the mind of the court appears to make any claim as to the arm, ears and guide roller shown in Fig. 5, nor is there in the description of the operation any reference which we think can properly be construed as referring to them. We think it was contemplated in the Dawson reissue application that the cord should pass through the eyelet 10 of the bracket 7 as shown in Fig. 3, and that the overhanging arm 11 of Fig. 5 with its ears and small pulley, or guide roller, was not considered for the purpose and that it is nowhere claimed by Dawson. We understand it to be a rule generally applicable "to refuse to allow diagrams to supply an element altogether lacking from the specifications." See Davis-Bournonville Co. v. Alexander Milburn Co. (D. C.) 297 F. at page 848.

We think it significant that, in describing the operation of the Dawson reissue patent, no reference is made in specific words to the upwardly extending arm 11 and the ears and guide roller shown in Fig. 5, although there is a discussion of the slot portion of said figure in its relation to locking the pintle. Lines 37 to 53 inclusive (Tr. 26) of the Dawson reissue specification read as follows:

"The end 6' of the pintle aperture forms a pocket which supports the pintle 5 when the curtain is turned in either direction and this is accomplished by the operator manipulating the single cord 9, the first pull on the cord having the effect of lifting the pintle from its locked position in the lower end 6ᵃ of the opening 6, into the pocket 6' where it is capable of rotating in one direction or the other accordingly as the cord 9 is pulled down or allowed to move in the direction so long as it is kept taut, the pintle relocking when the cord is released or slackened permitting the pintle by gravity to roll over into the lower end 6ᵃ of the opening 6, when it locks."

That the quoted paragraph has reference to Fig. 5 is manifest from the fact that the only place in the five drawings where the numerals 6' and 6ᵃ appear is in connection with that figure. It appears from the original file referred to supra that the quoted paragraph was inserted as an amendment (Original File 167 15) to the specification at the time of the filing of the cut of the blueprint heretofore alluded to, and it is the last paragraph of the specification in the reissue, coming immediately before claim 1.

Upon the record, therefore, the court must conclude that, in so far as the arm *11* and the ears with guide roller held therein are concerned, the insertion of Fig. 5 was accidental and put there by mistake.

Under this finding of fact upon this phase of the controversy, what is the applicable law?

Appellant has furnished us with numerous references to adjudicated cases to fortify his insistence that an accidental showing with no claim based thereon in the patent issued does not constitute an anticipation or disclosure which should preclude favorable action on appellant's claim covering this point.

In Kryptok Co. v. Stead Lens Co. (D. C.) 207 F. 85, 92, affirmed Id. (C. C. A.) 214 F. 368, it was said:

"The disclosure of a recess in Figure 4 of the drawings of the Morck patent, if it be a disclosure at all, was purely accidental. It was certainly not appreciated by the inventor. It is well settled that it is no anticipation that by a mistaken showing in the figure of a preceding patent, by the error of the draftsman, the structure of the patent appears contrary to the conception of the inventors and the reading of the patent. Edison Electric L. Co. v. Novelty Incandescent Lamp Co. (C. C. A.) 167 F. 977, 93 C. C. A. 387; Gray Telephone Pay Station Co. v. Baird Mfg. Co. (C. C. A.) 174 F. 417, 98 C. C. A. 353; Beckwith v. Malleable Iron Range Co. (C. C.) 174 F. 1001; Brill v. Third Ave. R. Co. (C. C.) 103 F. 289."

In Gray Telephone P. S. Co. v. Baird Mfg. Co., 174 F. 417, 421 (C. C. A. 7), the court stated the rule to be:

"A patent for a mechanical combination is not anticipated by a drawing in a prior patent which incidentally shows a similar arrangement of parts, where such arrangement is not essential to the first invention, and was not designed, adapted, or used to perform the function which it performs in the second invention, and where the first patent contains no suggestion of the way in which the result sought is accomplished by the second inventor."

In Edison Electric Light Co. v. Novelty Incandescent Lamp Co., 167 F. 977, 980 (C. C. A. 3), Archbald, J., discussed the question as follows:

"Equally ineffective is it to urge that the Edison construction is disclosed by the Lemp and Wightman patent, * * * where, by an error of the draftsman in one of the figures, the outer section of the leading-in wire is apparently made to extend into the glass.

The inventors had no such conception, and no one reading the patent would get any idea of it, if, indeed, he would not perceive and correct the mistake. To accept it, under the circumstances, as a disclosure which advanced the art, anticipating the present invention, would reflect on the judgment of the court."

In the case of Hale & Kilburn Mfg. Co. v. Lehigh Valley Traction Co. (C. C.) 126 F. 653, 656, the mechanism involved related to certain improvements in the backs of car seats by the addition of a handhold from the cutout corner of the seat. The inventor was George H. Davis; his letters patent being No. 648,927. Prior to the issuance of the patent to Davis letters patent had been issued to one Hale, the number being 626,831, and the court states "the drawings of the seat back and handle are precisely alike in each." It is further recited in the opinion of the court that, although Hale makes no claim for the seat back or the handle, the *specification* (italics ours) has the pertinent paragraph:

"The said back, *B,* is provided with a handle, *K,* to support passengers standing in the aisle. This is preferably performed by cutting away the seat-back at one corner and attaching thereto a handle, which thus forms a substantial continuation of the seat-back frame."

The court then continues:

"Unexplained, this exact likeness would, of course, be fatal to the Davis patent, and undoubtedly the foregoing facts cast upon the complainant the burden of showing by clear and convincing evidence that, in spite of appearances, Davis was entitled to priority of invention."

Such satisfactory evidence in that case was found in the testimony of Hale, and the court from it declared "the likeness between the two drawings is satisfactorily accounted for," and held that, in the absence of any claim by Hale, notwithstanding the specific language quoted from the specification, there had not been a publication such as to preclude the Davis claim.

It seems to us that the Hale & Kilburn Case is practically on all fours with the case at bar. We have found, not from testimony indeed, but from other matters appearing in the record that are quite as convincing as testimony would be, that Dawson made no claim, and that as to the arm, ears, and guide roller there was not a specific or even a general description in the specification.

In the later case of United States Metallic Packing Co. v. Hewitt Co., decided by the Circuit Court of Appeals, Seventh Circuit,

April 24, 1916, and upon which a rehearing was denied July 13, 1916, 236 F. 739 (C. C. A. 7), the court said:

"A patent for a mechanical combination is not anticipated by a drawing in a prior patent which incidentally shows a similar arrangement of parts, when such arrangement is not essential to the first invention, and *was not designed, adapted, or used to perform the function which it performs in the second invention, and where the first patent contains no suggestion of the way in which the result sought is accomplished by the second invention.*" (Italics ours.)

This seems directly in point under the facts of the instant case, and we do not think its applicability is overcome by the expression in the still later case of Fulton Co. v. Bishop & Babcock Co. (C. C. A.) 284 F. 774, cited by the Solicitor for the Patent Office, in which the Circuit Court of Appeals, Sixth Circuit, held that under the facts of that particular case the disclosures were not to be regarded as merely accidental or incidental. The facts of that case differed from the Metallic Packing Co. v. Hewitt Co. Case as well as from the others cited supra and from the case at bar.

In the case of Keene v. New Idea Spreader Co. (C. C. A.) 231 F. 701, 708, cited by Solicitor for the Patent Office, the Circuit Court of Appeals said:

"*Apart from the undisputed testimony of defendant's expert,* the drawings alone must here be relied on." (Italics ours.)

In the case at bar, it seems to us the matters in the record together with matters *not* in the record, but which might have been placed there had there been an intent of claim on the part of Dawson, differentiate it from the Keen Case, and we are not confined merely to an examination of the drawing. It is noted that in the Keen Case the Court pointed out that, "when the identifying letters appearing in the specifications are read in connection with the drawings, the parts are easily recognized," etc. In the Dawson reissue, numerals instead of letters were used in the specification to explain the drawings, and there is no reference in the specification to numeral *11* of Fig. 5 and the ears and guide roller in the Figure as drawn have no numerals or other designating or descriptive marks.

The facts in American Steel Foundries et al. v. Bettendorf Axle Co. (D. C.) 245 F. 571–576, also cited by the Patent Office Solicitor do not, to our minds, correspond with the facts of the instant case so as to make the language quoted therefrom is Solicitor's brief applicable.

■ We are of opinion, therefore, and hold that, so far as that part of Figure 5 in the Dawson reissue No. 14,375, showing the overhanging arm *11* and the ears and guide roller, or pulley therein, is concerned, it was an accidental showing of such a nature, under all the facts of the case, that it cannot be held to be anticipation of the later application of appellant Daniel, and there does not appear to be any conflict between the claims of Daniel in the instant case and that portion of Fig. 5 in Dawson reissue which relates to the locking of the pintle.

Since the court held the Dawson reissue 14,375 not to be a valid reference, it remains to be determined whether the claims of Daniel, in whole or in part, were anticipated by the patents to Truemper and the original patent 1,181,152 to Dawson, one or both.

■ The court has made careful examination and analysis of the drawings, specifications, methods of operation, and claims accompanying the Truemper and Dawson patents and compared them with those of appellant, and we conclude that there is a distinction between them sufficiently clear and definite (Fig. 5 of the Dawson reissue being eliminated from consideration) to show invention on the part of Daniel, and we are of opinion that this distinction is fairly stated in the conclusion of appellant's brief in the following language:

"The distinction between the present invention as clearly set forth in all of the claims and the Dawson and Truemper patents lies first in the provision of the round bearing in the bracket arm for receiving the end of the roller, second the construction of the supporting arm for the roller and the ears for the guide roller of one integral piece so that they may be stamped out of metal at one operation, which is neither suggested nor shown in these patents."

We shall not endeavor to state in this opinion in detail the conclusions reached from our examination (which we have tried to make thorough) of the authorities cited pro and con in the respective briefs upon the question of the integration of parts into a single piece. We think the weight of authority applicable under the facts of this particular case sustains the contention of appellant. It appears to us that the device of Daniel, taken as a whole, of course including the parts held to show invention, accomplishes a result or function in a manner so differing from any prior art brought to our attention

in the record as to render his claim allowable, and that the facts of record bring his case within the doctrine laid down in Davis-Bournonville Co. v. Alexander Milburn Co. (D. C.) 297 F. 846, 851, where the District Judge in an opinion showing great research and learning said:

"However, the tip as ·it stands is not single, and is incapable of the advantages of the plaintiff's and defendant's device. It is, indeed, sometimes said that there can be no invention in making into two parts what was single, or vice versa. So far as such statements explain any given situation, they are very well; but they should not be taken as positive rules of general application. It is often an invention of considerable merit to combine into one part what everyone had theretofore thought must be in two. In the case at bar it is certain that Brousseau's torch was not fitted as a universal head for interchangeable tips, and that it required the suggestion from some one else to make it so. It is true that once one thought of it, there was not much trouble in making the changes, but that is often so. Experience might show that it was unnecessary to adopt Brousseau's awkward member, *32*, and that the remaining two parts might be consolidated, but that experience was apparently not yet at hand."

There is in the first syllabus of the opinion last above referred to a statement based upon one declaration of the Court, which we think may very properly be quoted in the decision of the case at bar. It reads:

"A patent for a device which displaced all·other similar devices and which seems likely to be the final form, even if patentees at the time did not recognize the full value of their invention, held entitled to much favor from the court."

While we would not assume to assert that the Daniel mechanism is likely to be the final form of the springless shade roller, or that it has displaced or will displace others, it does appear from statements in the brief for appellant, to which Solicitor for the Patent Office makes no objection or question, that it has proved to be a success, while the Truemper and Dawson patents have never been utilized in manufacture or commerce.

Under the view which we take of the case, it is not deemed necessary to analyze, discuss, or decide the respective contentions relative to what weight should be given to commercial success and we refrain from so doing.

The essential claims necessary to cover Daniel's rights as herein found are contained in the last three claims.

The decision of the Board of Appeals is therefore affirmed as to claim 1 and reversed as to claims 2, 3, and 4.