**FOOD MACHINERY CORPORATION v. PACIFIC CAN CO. et al.**

No. 22796.

District Court, N. D. California, S. D.

June 7, 1946.

Lyon & Lyon, Leonard S. Lyon, and Frederick S. Lyon, all of Los Angeles, Cal., and Philip A. Minnis, of San Jose, Cal., for plaintiff.

M. D. L. Fuller, Pillsbury, Madison & Sutro, and A. Donham Owen, all of San Francisco, Cal., for defendants.

ROCHE, District Judge.

Plaintiff seeks an injunction, accounting and costs for the alleged infringement of two patents which it holds as assignee of the inventor, Thompson. Defendants claim invalidity and non-infringement. Both patents relate to combined pressure cookers and pressure coolers used in the food processing industry.

The first patent in suit, Thompson No. 1,694,996, was applied for on January 10, 1921, but because it was placed in interference with an application filed by one Johnson, it did not issue until December 11, 1928. This patent is now in the public domain, its seventeen year term having expired in December, 1945, some two months after the present suit was filed.

The second patent, Thompson No. 2,211,-801, issued on August 20, 1940, and thus has eleven years to run. For the sake of clarity the two patents will be considered separately.

### Thompson, No. 1,694,996

This is a "combination" patent largely involving elements old in the canning art. The processing of food after canning requires the cans to be subjected to heat under a greater than atmospheric pressure. This is done by means of a pressure cooker, a chamber through which the cans are conveyed by mechanical means. If these treated cans are discharged directly from the cooker, the sudden change of pressure frequently causes bulging or bursting at the seams. To meet this problem a pressure cooler was devised, into which the heated cans passed from the cooker. By the time they had traversed the length of the cooler they had cooled sufficiently to enable them to withstand outside atmospheric pressure. At first both the cooking and cooling chamber were housed within the same shell. Then they were separated into individual machines with a transfer means between. In this "combination" patent Thompson stated the object of his invention to be the provision of inter-chamber communication of such character that

pressure higher than atmospheric might be independently established and maintained in each without interchange.

Thompson's application showed a pressure cooker and a pressure cooler arranged end to end with an inclined can conduit connecting them. The cans traveled through the cooker and cooler by means of a spiral canway and rotatable reel but the transfer from one to the other was by gravity, the processed cans entering the conduit through a valve controlled inlet at the top of the cooker and rolling by gravity to the entrance of the cooler. The reel and valves were operated in unison by means of an exterior longitudinal shaft with gear reductions.

Johnson's application showed a similar arrangement of cooker and cooler connected by an inclined canway. He, however, used an endless chain conveyor to move the cans through the tanks and transferred them from cooker to cooler by means of an inclined chute containing a valve to handle the cans

The interference proceedings resulted in the basic claims going to Johnson. Thompson was finally allowed 14 claims, three of which are in suit, on his representation that no reference showed a connecting conduit through which the cans rolled by gravity.

Some months after filing this first application, Thompson filed a second application for an "improvement" patent. This showed the cooker and cooler arranged side by side with a single pressure valve as the transfer means and this was the invention claimed. Other construction details followed those in the first application. Pursuant to this application, patent No. 1,467,-960 issued. It expired in 1940. Johnson patent No. 1,588,374, which issued as the result of the interference with Thompson's first application, expired on June 8, 1943, and it was after this date that the defendants began to manufacture the alleged infringing machine.

Plaintiff admits that the expiration, in 1940, of this "improvement" patent left the public free to use the invention therein protected, that is, the single transfer valve. It argues, however, that the other elements of the machine were still protected by cer-

tain claims of Thompson patent No. 1,694,-996 and that the defendants by manufacturing the machine described in the "improvement" patent, had infringed these claims. Of claims 1, 2 and 3 alleged to be thus infringed, claim 1 is typical:

"1. A combined cooker and cooler comprising a cooking member and a cooling member; a spiral canway in each member; a rotatable reel in each member for moving cans through the canway; means for independently establishing and maintaining in each member a pressure above atmospheric; means for feeding cans one at a time successively into the cooking member; means for moving said cans in a single continuous line successively through the spiral canways in the members; a conduit for passing containers from one member to the other without interchange of pressures; and means for successively discharging the cans one at a time from the cooling member."

Claim 3 substitutes for the term "conduit" the phrase "a valve controlled communication between the outlet of the cooker and the inlet of the cooler."

The file wrapper in evidence discloses that the only novel feature of Thompson's machine was the conduit through which the cans rolled by gravity from the cooker to the cooler. The rotary reel and spiral track were already old in the art and had been used by Thompson in an earlier patent. The Examiner held that their substitution for the endless chain conveyor of Johnson would be without invention. Likewise the Examiner held that the use of an actuating shaft with gear reductions was a mere mechanical expedient. The record supports the Examiner's conclusions.

Plaintiff thus finds itself in this dilemma. If it be held, as plaintiff urges, that claims 1, 2 and 3 cover any combination of a separate pressure cooker and pressure cooler wherein the cans travel by means of a spiral track and reel, the cooker and cooler being connected by a pressure tight transfer means, the claims would be invalid as an attempt to re-patent Johnson by merely substituting one type of carrier for another, both of which perform the same function. See Lincoln Co. v. Stewart-Warner Corp.,

303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008. R. G. Le Tourneau, Inc., v. Gar Wood Industries, Inc., 9 Cir., 151 F.2d 432.

█ If the terms "conduit" and "valve controlled communication" be interpreted to include the single transfer valve of Thompson's "improvement" patent, the claims in suit must fall by reason of double patenting since they and claim 8 of the "improvement" patent would cover the same structure. Plaintiff would thus be given, in two separate patents, generic claims covering the same structure, the effect of which would be to extend the patent monopoly from seventeen to twenty-two years. The fact that the patent applications were co-pending is immaterial. It is well established that once one of the co-pending applications issues with a generic claim, the other co-pending application, irrespective of whether it was filed first or later, cannot validly issue with a generic claim. In re Hoffberger, 109 F.2d 237, 27 C.C.P.A., Patents 845; Id., 109 F.2d 239, 27 C.C.P.A., Patents, 835.

█ If the claims in suit are specific to the "conduit" as described in the specifications, the claims are valid but not infringed by the defendants whose structure admittedly uses the single transfer valve covered by the Thompson expired "improvement" patent. This interpretation is amply supported by the record and the Court accordingly so finds.

### Thompson No. 2,211,801.

This second patent in suit, which issued to Thompson on August 20, 1940, was designed to solve a problem that had long plagued the canning industry. In reel and spiral track cookers and coolers the cans enter the chamber through a valve controlled inlet and are then carried by the rotating reel along a helical track whose continuous spiral trend gives to the cans a constant endwise movement whereby they are propelled through the cooker or cooler. During the descending portion of the reel's revolution, gravity causes the cans to roll freely on the can track. During its ascent the reel carries the cans bodily and their endwise movement results from pressure by the sides of the spiral track. This has an abrasive effect which may score or wear away portions of the tin coating on the can heads and leave black marks or spots which may eventually rust. Such unsightly and weakened cans are not acceptable to the trade and represent a considerable loss to the canner.

Thompson's solution is the so-called "lead, no-lead" can track with the endwise movement substantially confined to that portion where the cans tend to roll freely on the canway. The Patent Office allowed 22 claims of which claims 3 to 8, 12 to 16, 19 and 22 are in suit. Claims 7 and 8 are typical:

"7. In an apparatus for handling canned goods, a horizontally disposed rotatable can propelling reel, and a helix-like can guide surrounding said reel for engagement with propelled cans to shift said cans endwise longitudinally of the reel, the upper portions of the guide convolutions being substantially without lead whereby endwise movement of the cans is confined to the lower portions of their path of travel.

"8. In combination, a horizontal cylindrical shell, a rotary conveyor provided with can propelling means arranged to receive cans therebetween for free movement between the shell and the conveyor both radially and axially thereof, and canway means in said shell including stationary canway portions having leading and non-leading sections, said leading sections having an axial trend so disposed with respect to said conveyor as to cause cans propelled thereby to rollingly engage the canway while moving therealong."

Defendants take the position that all the claims are invalid because anticipated by one Chapman in his patent No. 1,646,577, which issued on October 25, 1927, and that even if said claims be held valid they are not infringed by defendants' machine which has a ¼ inch lead in the upper part of the canway and a 5¼ inch lead in the lower part.

█ The defense of anticipation rests upon two points—first, that Fig. 5 of the Chapman patent drawings reveals the lead, no-lead principle and second, that in 1923 Chapman actually incorporated this principle in one or more machines. The evidence on this second point is too confused

and uncertain, in the Court's opinion, to support the claim of prior manufacture. That the oral testimony of witnesses speaking from memory only in respect to past transactions and old structures claimed to anticipate a patented device, physical evidence of which is not produced, is very unreliable and must be so clear and satisfactory as to convince the Court beyond a reasonable doubt before it will be accepted as establishing anticipation is a rule that has long been recognized by the courts. Cantrell v. Wallick, 117 U.S. 689, 6 S.Ct. 970, 29 L.Ed. 1017; Parker v. Stebler, 9 Cir., 177 F. 210 and cases cited therein; Stoody Co. v. Mills Alloys, 9 Cir., 67 F.2d 807, 810.

■■ The Fig. 5 relied upon is an illustration of a can track in solid lines with the other side of the track shown by dotted lines which appear to run diagonally. Defendants' witnesses testified that they would interpret this drawing to show a lead, no-lead can track. Plaintiff's witnesses testified that it was only a schematic drawing and too full of errors to permit any clear interpretation. The patent contains nothing in either the specification or claims to indicate that Chapman had in mind anything other than the conventional continuous spiral track, nor is the type of canway relevant to his invention. Chapman stated his object to be the provision of a "continuous cooker in which jets of air, water or steam are used to force the cans into the cooker and to discharge the cans therefrom." The Court's language in Brill v. Third Ave. R. Co., C.C. 103 F. 289, 292, 293, is pertinent: "Manier's invention was not designed, nor adapted, nor used for the performance of the function performed by Brill's device, nor was the way to accomplish Brill's result suggested by Manier's invention." If anticipation is to be found in a drawing unaided by any text, the disclosure must be clear. Trussell Mfg. Co. v. Wilson-Jones Co., 2 Cir., 50 F.2d 1027, 1029, and cases cited therein. Chapman's Fig. 5 makes no such clear disclosure and defendants' interpretation is pure conjecture, insufficient to support the defense of anticipation.

There remains the question of whether defendants have avoided infringement of what the Court finds to be valid claims by placing a ¼ inch lead in the upper portion of their canway while the lower portion has a lead of 5¼ inches. The situation is analogous to that in Weiss v. R. Hoe & Co., 2 Cir., 109 F.2d 722, 726. There the patent covered an "airtight" ink fountain for a rotary press. The court found that the defendant's machine, which was not completely airtight, infringed, and in the course of the opinion said, "The fact that an infringer copies imperfectly and does not achieve the full result of the patent is not sufficient to prevent infringement where there has been substantial copying."

The evidence shows that Thompson successfully solved the problem of damaged can heads and that defendants, with their ¼ inch lead, are enjoying substantially the advantage of Thompson's invention. To say that by this trifling lead the defendants have avoided infringement requires a narrower interpretation of Thompson's patent than this Court is prepared to make. "Generally speaking, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result.'" Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147. The Court therefore finds that defendants' machine constitutes an infringement of the claims in suit of Thompson patent No. 2,-211,801

In accordance with the foregoing it is therefore by the Court ordered that there be entered herein, upon findings of fact and conclusions of law, judgment as follows:

1. That Thompson patent No. 1,694,996 is valid, particularly as to claims 1, 2 and 3, but not infringed by defendants' machine;

2. That Thompson patent No. 2,211,801, particularly as to claims 3 to 8 inclusive, 12 to 16 inclusive, 19 and 22, is valid and infringed by defendants' machine;

3. That defendants and those controlled by defendants be, and they hereby are permanently enjoined from further infringement of said Thompson patent No. 2,211,-801;

4. That the case be referred to a Master to take and state an account of the profits

realized by defendants from said infringement and the damages suffered by plaintiff from defendants' infringing acts, and that plaintiff have judgment against the defendants, jointly and severally, therefor;

5. That the respective parties pay their own costs.