### HOFFHEINS *v.* RUSSELL.

1. Claims 1, 8, 9, 11, 12, 14, 16, and 19 of reissued letters-patent No. 2224, granted April 10, 1866, to Reuben Hoffheins, for an "improvement in harvesters," the original, No. 35,315, having been granted to him May 20, 1862; and claims 1, 2, 6, 7, and 9 of reissued letters-patent No. 2490, granted Feb. 19, 1867, to him, for an "improvement in harvesters," the original, No. 40,481, having been granted to him Nov. 3, 1863, and reissued in two divisions, one, No. 1888, Feb. 28, 1865, and the other, No. 2102, Nov. 7, 1865; and No. 2490 having been issued on the surrender of No. 2102, — considered; and the difference between the specifications and the drawings of No. 35,315 and those of No. 2224, and that between the raking apparatus and rake-support of No. 2224 and those of the defendants, pointed out.

2. There is no warrant in No. 35,315 for locating the rake-support, or any part of it, on the finger-beam, and as each of the above-named claims of No. 2224 has, as an element, either a rake, or a rake and reel, mounted on, or attached to, the cutting apparatus or the finger-beam, No. 35,315 could not lawfully be reissued with those claims.

3. The defendants devised a new arrangement of rake, which made it possible to mount a rake-support on the heel of the finger-beam, where the rake-support of No. 2224 could not be mounted. The difference between the yielding belt-tightener of No. 2224 and their arrangement for driving the

raking apparatus pointed out, and the latter held not to be a mechanical equivalent for the former.

4. No. 40,481 negatives the idea of mounting the rake-post on the finger-beam, while an element in claim 1 of No. 2490 is the mounting of the raking mechanism on the finger-beam. In No. 2490, a driver's seat mounted on the main frame, so as to enable the driver to ride on the machine while the rake is in operation, is an element in claims 1 and 9, while the driver's seat in No. 40,481 is not, and cannot be, in such a position that the driver can ride on the seat while the rake is in operation.

5. The raking apparatus is an element in claims 2, 7, and 9 of No. 2490, and, in view of the differences between the two machines, in the construction of the raking mechanism and the arrangement and location of the rake-post, the rake of claims 2, 7, and 9 is to be construed to be such a rake, and one so arranged, on a rake-post so mounted, as is shown and described in the specification, and thus does not include the defendants' raking mechanism or rake-post.

6. The driving device in claims 6 and 7 of No. 2490 held not to include the defendants' driving device, the former being an extensible tumbling shaft and the latter a chain belt with open links, and patentability or invention inhering only in the device and not in its location.

7. No cause of action is established against the defendants on either of the patents sued on.

APPEAL from the Circuit Court of the United States for the Northern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. George H. Christy* and *Mr. John H. B. Latrobe* for the appellant.

*Mr. George Harding* and *Mr. John R. Bennett* for the appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This suit is brought for the infringement of two reissued letters-patent granted to Reuben Hoffheins, the appellant. One, No. 2224, was issued April 10, 1866, for an " improvement in harvesters," the original patent, No. 35,315, having been issued to him May 20, 1862. The other, No. 2490, was issued Feb. 19, 1867, for an " improvement in harvesters," the original patent, No. 40,481, having been issued to him Nov. 3, 1863, and reissued in two divisions, one, No. 1888, Feb. 28, 1865, and the other, No. 2102, Nov. 7, 1865, and No. 2490 having been issued on the surrender of No. 2102.

No. 2224 contains nineteen claims, and No. 2490 contains

nine claims. In No. 2224, claims 1, 8, 9, 11, 12, 14, 16, and 19, and in No. 2490, claims 1, 2, 6, 7, and 9, are alleged to have been infringed. The Circuit Court rendered a decree that the appellees had not infringed any invention of which the appellant was the original and first inventor, recited in the two reissues sued on ; that No. 2224 " contains inventions different from that contained " in No. 35,315 ; that No. 2490 contains inventions different from that embraced in No. 40,481 ; that the said reissues respectively are, therefore, void ; and that the bill be dismissed. From this decree this appeal is taken.

In No. 2224 the claims in question are these : " 1. A sweep-rake, which is mounted upon the heel of the finger-beam proper, or upon the inner front corner of the platform of a harvester which has its cutting apparatus and platform hinged to the draft-frame, all in such manner that the rake-arm sweeps the platform from front to inner side, and maintains a correct position in relation to the finger-beam and platform during the rising or falling movements thereof on the joint or joints by which the finger-beam is connected to the draft-frame, substantially as set forth." " 8. In a harvesting machine which has its cutting apparatus hinged or jointed to the main frame in such manner as to allow it to conform at both ends to the undulations of the ground, and a rake mounted upon the said cutting apparatus, or upon the platform thereof, I claim so constructing and arranging the several parts, that the support of the rake can occupy a position outside of the inner drive-wheel B, or a position which is between the point of suspension $h$ and the outer divider G, and can also be hung or be suspended below the draft-frame, substantially as described." " 9. Effecting a combination of a rake and reel, located substantially as described, and a finger-beam and platform, with the main frame, by means of a hinged draw-bar, $b$, and hinged brace, I, or hinged suspender, $f$, and an extension bracket, 2, or their equivalents, substantially as and for the purposes described." " 11. Preventing a too sudden or abrupt deflection of a rake and reel mounted upon a hinged-joint cutting apparatus, by carrying the point of suspension beyond the rake-support toward the centre of the draft-frame, by means substantially as described." " 12. A continuously revolving

rake, which is mounted directly and wholly upon the platform or finger-beam, so as to rise and fall therewith independently of the draft-frame, when said rake is located between the centre of the draft-frame and the outer divider, and passes in at the front of the machine upon the platform and sweeps around to the inner side of the platform, substantially as described." " 14. The combination of a suspended hinge-joint cutting apparatus of harvesters, and a combined rake and reel, which is mounted directly and wholly upon the suspended platform or hinged finger-beam, substantially as and for the purpose described." " 16. The combination of a combined rake and reel, mounted upon a hinged-joint cutting apparatus, and a yielding belt-tightener, substantially as and for the purpose described." " 19. Providing, in a harvester with the rake attached to its hinged finger-beam or platform, an extensible means for driving the rake, which will permit the platform and rake to rise and fall together, and accommodate themselves independently of the draft-frame to the undulations of the ground, substantially as described and for the purpose set forth."

The original patent, No. 35,315, in stating what the invention is, says that it consists of "certain improvements " in the manner of mounting and operating a revolving rake." There were three features set forth in the specification of No. 35,315 : 1. The peculiar construction of the reel and rake. 2. The peculiar form and location of the rake-post. 3. The peculiar manner of operating the rakes. There were only three claims in No. 35,315, one covering each of said three features, as follows : " (1.) A combined reel and rake, rotating upon a vertical axis, and having its arms successively turned up into an inverted position to pass over the main frame, substantially as explained." " (2.) The inclined standard I, rigidly mounted upon a loosely hinged platform, and employed to support a revolving reel and rake in an unchangeable position in relation to the said platform, without obstructing the free motion of the latter." " (3.) The yielding and swivelled rod Q operating in combination with the band P and pulleys O and R, in the manner and for the purposes herein shown and explained."

A copy of the model filed in the Patent Office with the

original application for No. 35,315 is in evidence. The invention shown in the specification of No. 35,315 consists, in general terms, in mounting a rake upon a quadrant-shaped platform, said platform being hinged to the frame of a two-wheeled machine in such manner that the raking-arms will maintain at all times a proper working position relatively to the surface of the platform, and at the same time receive motion from driving mechanism mounted on the main frame, the result being accomplished by constructing the raking apparatus in a peculiar manner, and mounting it in a peculiar manner upon the platform of the machine, and, also, by connecting the driving mechanism of the rake with the driving mechanism on the main frame, by a belt mounted in a peculiar manner, so that the varying changes in the position of the platform and the raking apparatus relatively to the main frame and the gearing therein will not affect the driving mechanism of the rake. The specification says : " D is a segmental platform, provided with a divider, E, at its outer end, and resting upon a roller, *e*. F is a draw-bar, connected at front by a universal joint to the frame A, and attached at back to a shoe, *f*, upon which the inner side of the platform may rest. G is a lateral brace-rod, hinged at one end beneath the right-hand rear corner of the main frame, and at the other to the draw-bar F, or shoe *f*. H is a link by which the inner end of the platform is suspended from the back of the main frame." This language describes the parts which relate to the platform and the devices by which it is attached to the main frame, and by which it is permitted to vary its movement relatively to the main frame, to conform to the unevenness of the ground, and there is nothing else on the subject in the text of the specification. In the drawings of No. 35,315 the suspending link H, by which the inner side of the platform is suspended from the main frame, so as to keep it on a level with the wheel at the outer shoe, at the opposite side of the platform, is attached at its lower end to an arm which extends out from the platform nearly to, but short of, the middle of the width of the tread of the left-hand driving-wheel B, but the drawing represents the central line of the link H as in the vertical plane of the left-hand edge of the tread of the wheel B, so as to put the point of

suspension in a vertical line with the left-hand edge of the tread of the wheel B. The model referred to shows the link as being suspended at a point on the frame to the right of the vertical plane of the left-hand edge of the tread of the wheel, but not to the right of the vertical plane of the middle of the width of the tread. In the reissue great stress is laid upon this point of suspension. In the specification of the reissue it is said : " From the inner corner of the finger-beam or platform, or from the metal foot-piece of the rake and reel-support, by which the support is screwed to and braced on the platform and finger-beam, a strong bracket, 2, is extended beyond the left-hand side-beam of the draft-frame. To the extremity of this arm a swinging-link or chain, *f*, is loosely connected or jointed, as at *g*, and by means of this link or chain the finger-beam, platform, and rake, though arranged at the left of the left-hand drive-wheel B, can be suspended from a point which is to the right of the said left-hand side-beam. The suspension is effected by hanging the upper end of the link or chain to the rear beam of the draft-frame, as represented at *h*." In the drawings of the reissue the point of suspension of the link is located a little to the right of the vertical plane of the middle of the width of the tread of the left-hand driving-wheel, and the arm or bracket to which the lower end of the link is attached extends to a point beyond, and at the right-hand of, the middle of the width of such tread. In the specification of No. 35,315 the word " finger-beam " is not found, nor is a finger-beam described in it or shown in the drawings.

As to the method of mounting the rake, the specification of No. 35,315 says : " I is a post rigidly secured to the inner side of the platform, and inclining over the rear of the main frame ; *i* is a brace-rod extending from the draw-bar to the said post, to support the latter at top ; J is a box mounted on the top of the post I, and constituting the bearing in which the disk K rotates. The rakes or reel-arms L L′ are mounted in couples upon the ends of horizontal shafts M M′, which are journalled at right angles across the rotating disk K." This is all that is found in that specification as to the location of the axis of the rake. On the other hand, the specification of the reissue says : " Fig. 9 is a rear elevation of a portion of the machine, show-

ing the manner of suspending the rake and reel-support upon the hinge-joint finger-beam or platform thereof." The drawings of the reissue show a finger beam, and it is lettered, and referred to by letter in the text. The specification of the reissue further says: "It is also important to have the suspension of the rake made in such a manner that the base of the support of the axis of the rake is wholly upon the hinged finger-beam, or the platform thereof, and also that the rake, the finger-beam, and the platform shall be rigidly connected together." Here the word "finger-beam" is again introduced, as important in connection with the support of the axis of the rake. The expert for the defendants states that the drawings of No. 35,315 show the base of the support of the rake so far back, or to the rear of the front edge of the platform, that it cannot, in his opinion, be brought in contact with the finger-beam, without changing its locality very materially, or the mode of its construction or attachment. But the specification of the reissue says: "D is the finger-beam and E the platform of the harvester, the cutting apparatus and guard-fingers being left off. F is a support for a combined rake and reel. This support is mounted rigidly upon the inner front corner of the platform and heel of the finger-beam, but it may be mounted either wholly on the finger-beam or wholly on any part of the platform which is to the left of the left-hand drive-wheel B, or to the right of said drive-wheel, if it is a right-hand machine." There is no warrant in the original patent for locating the rake-support, or any part of it, on the finger-beam.

As to claim 1 of the reissue, the finger-beam is made an element of the combination, while in the specification and drawings of No. 35,315 there is no reference to a finger-beam. Moreover, the raking apparatus of the appellant is so constructed that when one of the arms has descended to force the grain towards the platform and to sweep across the platform, the opposite arm must be raised to such a point as to clear the wheel of the machine. The arms are in pairs, and the motion of one arm of a pair is controlled by the motion and operation of the opposite arm of that pair. The inclination of the two to each other is such that when one is sweeping across the platform the other forms an exactly opposite angle to the axis

on which they both revolve.  Therefore, the support of the
rakes must be so mounted that they can descend to the grain
at the proper point in front of the cutters to press in the grain
and sweep across the platform and deliver the gavels and then
rise out of the way of the frame.  To effect this, the point of
vibration of the pair of arms must be raised so high and car-
ried over towards the frame so far, that the descending arm
may reach its proper position to do its work, while the other
arm of that pair shall clear the frame in rising.  Therefore,
the support of the raking apparatus was required to be of such
form and character and so placed relatively to the platform
and frame, that one arm of a pair would not interfere with the
working of the other arm of the same pair.  Now, the arms of
the raking apparatus are diametrical arms, the centres of
which are axes mounted on a horizontal head, which head is so
fastened on a vertical shaft that, the opposite ends of the arms
being inclined to the axis of rotation, one end of one arm will
descend and sweep across the platform, while the other will be
carried in an exactly opposite direction, with its rake-teeth
turned up while the teeth of its opposite arm are turned down.
In such an arrangement, the bearing point or axis of rotation
of the arms must be carried up a considerable distance above
the platform and reach over in a diagonal direction from the
front edge of the cutters to the delivery edge of the platform,
so that the rake at its end next the base of the rake-support
may be brought close enough to the platform to do its work.
Hence, the inclined post of No. 35,315, described as so inclined
and thus claimed in claim 2 of that patent.  But, in the speci-
fication of the reissue, though the drawings show the same
sort of inclined post or standard, it is said: " From the plat-
form or finger-beam the support *may* extend in an inclined
position as high as the top of the draft-frame, and then take a
turn over toward the centre of said frame, as represented, so as
to form a support for the rake and reel which shall be some-
what higher than the frame and between the two drive or
supporting wheels.  The particular shape and height of this
support is not very material, so long as the base of it is affixed
at some point between the centre of the main frame A and
the outer shoe or divider G."  The special kind of support

described and shown in the patents, original and reissued, is essential to the operation of the special kind of raking apparatus there described. But the appellees' machine has a raking apparatus differently organized. In it each arm moves independently of every other arm, the arms are not coupled in pairs, and each does its work without reference to the movement of any other. Therefore, it is unnecessary to raise the supporting point of the rake-arms to any considerable height or to carry it over to a location between the drive-wheels, and in the appellees' machine the pivot on which the rakes revolve is at a considerable distance towards the outer shoe and is not all between the drive-wheels. The appellees' sweep-rake is not substantially such a sweep-rake as is referred to in claim 1 of the reissue, nor is it mounted in such a manner as to perform the functions of the appellant's rake. The rake-post in the appellees' machine is vertical and not inclined, and is mounted on the shoe or inner end of the finger-beam.

In analyzing the two machines, in view of the state of the art, it appears that the appellant adapted a continuously revolving gathering and discharging rake to a two-wheeled loosely jointed finger-bar machine. To do this he employed a peculiar rake and a peculiar rake-support. The appellees employ an entirely different rake. They have a series of radial arms pivoted each independently of every other in a head, which has a double cam guideway for each arm, and the arms are thereby elevated vertically so as not to strike the frame in passing up. This makes it possible for the appellees to place the support for their rake on the finger-beam by the side of the frame and in the line of the cutters instead of behind the frame. No such organization is possible with the appellant's arrangement of rakes. The centre of movement of his rakes must be brought in line with the cutters by having an inclined rake-post, the base of which is not in a vertical line with the line of the cutters. He shows no mode of placing the base of the post on the finger-beam. If it were placed there, with his arrangement of rake-arms, and his inclined post, the centre of motion of the arms would be so far out of its proper position that the arms would not do their work. Having independent radial arms, the appellees can have a vertical and not an

inclined rake-post, and can bring the centre of motion of the arms in a line with the cutters by mounting the vertical post on the finger-beam.   They do this, and for that purpose they have a bridge over the inner shoe of the finger-beam for the foot of the rake-post to rest on, while at the same time the cutters can vibrate under the bridge.   The post is hollow and supports the cam guideway, and the vertical shaft which revolves the rakes passes up in and through the hollow post. The appellees have not borrowed from the appellant.   They devised a new arrangement of rake which made it possible for them to mount their rake-support on the heel of the finger-beam proper, where the appellant can never mount his and where that of the appellees is mounted.   The theory of the reissue appears to be that, as the original patent shows a special device for supporting a special arrangement of rakes, such device being located on a particular part of the platform other than, and not possible to be, a part of the finger-beam, he can claim in a reissue any device for supporting a revolving rake, even one located on the finger-beam.   To carry out this view, the word "finger-beam" is interpolated in the specification, in this connection, as an addition to the word "platform," and the rake-post is described as being attached to the finger-beam *or* the platform.   But there is an entire absence in the original specification, and in the reissued specification, of any description of any means by which the rake-support can be attached to or mounted on the finger-beam, or by which the rakes can be made to work with the rake-support in that location, or by which the connecting-rod of the cutters can be free to work with the support so placed.   The law of reissues never at any time, or under any construction, allowed that to be done which has been thus attempted in this case.

The foregoing views apply also to claims 8, 9, 11, 12, 14, 16, and 19, being all the other claims alleged to have been infringed, and each of which has, as an element, either a rake, or a rake and reel, mounted on or attached to the cutting apparatus or the finger-beam.

In the reissue claim 2 is substantially the same as claim 1 of the original, claim 5 (with the interpolation of the finger-beam) is intended to take the place of claim 2 of the original,

and claim 18 corresponds with claim 3 of the original. Yet the appellees' machine is not alleged to infringe either claim 2, claim 5, or claim 18 of the reissue, nor does it embrace what was covered by any one of the three claims of the original. As to the yielding belt-tightener of the appellant, which is the subject of claim 3 of the original patent and is an element in claim 16 of the reissue, the appellees' machine does not employ any device which performs the function of tightening a belt. It uses, to communicate motion from the main axle to the raking apparatus, an old form of chain belt, composed of square open links, connected by loops of metal between the links, and the links arranged to run over sprocket-wheels, which have teeth on them corresponding to openings in the links of the chain, and which prevent the chain from slipping on the wheels. As the links of the chain engage positively with the teeth on the sprocket-wheels, there is no need of a belt-tightener, as no slackness in the chain can interfere with the driving action. The only function of the appellees' device which holds up, by a yielding pressure, the under part of the chain belt, is to so guide that part, when slack, that the teeth on the sprocket-wheels may readily enter the links of the chain. The appellant's belt could not, in the same position, drive the raking apparatus so as to make it work properly. The appellees, by the use of sprocket-pulleys and a chain, dispense with a tight friction-band, and with a pulley around which the platform vibrates, and with a tightening pulley. Their arrangement is not an equivalent, in mechanism or functions, for that of the appellant.

It is made an element of claim 11 of the reissue that the point of suspension of the platform to the main frame is carried beyond the rake-support toward the centre of the draft-frame, by means described in the specification, so as to prevent a too sudden or abrupt deflection of the rake and reel. The specification of the reissue says, that "it is important that the great weight of the rake, finger-beam, and platform shall not cause the draft-frame to tilt over on its right-hand drive-wheels by sudden and abrupt motions, but shall tend to insure a square run of the draft-frame upon the ground during the pitching or rising and falling motions of the finger-beam, platform, and rake, and thus

an even and easy draft for the team be secured." But the re-issue shows the point of suspension of the platform to the main frame as being nearly under the axis on which the rake-arms revolve, and said point is near the vertical plane of the middle of the width of the tread of the drive-wheel which is next to the cutters, so that the inner end of the platform is subject to all the vertical motions of such drive-wheel. The point of suspension being in the pathway of the wheel, the rising or falling motion of the wheel must be communicated to that end of the cutters which is next to such wheel. In the appellees' machine the suspension of the platform is made by an arm extending out from the finger-bar or inner shoe to a point about opposite the centre of the main frame, and which arm is there suspended by a chain to a hook on the frame, so that the weight of the cutting apparatus and rake and inner part of the platform is transferred to a point nearly central between the drive-wheels. The appellant's structure shows no such organization, and does not involve what the appellees have done.

For the foregoing reasons, without considering the many other questions raised in the case, it must be held that the appellant has not established any cause of action against the appellees on reissue No. 2224.

In No. 2490 the claims in question are these: "1. The combination, in a two-wheeled hinged-joint machine, of a driver's seat mounted upon the main frame, with a raking mechanism mounted upon the finger-beam, and rotating around a vertical axis, or one nearly so, substantially in the manner described, for the purpose of enabling the driver to ride on the machine while the rake is in operation." "2. The combination, in a two-wheeled hinged-joint machine, of a shoe with a hinged joint in it, with a rake and platform having an extension, $J^2$, and with a draft-frame which sustains the weight of the cutting apparatus and raking apparatus with platform attached, at a point between the two drive-wheels." "6. Driving a revolving rake, or a combined revolving rake and reel, which move about a vertical or nearly vertical axis, by a device arranged on the grain side of the inner drive-wheel or inner side of the draft-frame." "7. Making a direct driving connection

between a revolving rake, or a combined rake and reel, which move about a vertical or nearly vertical axis, and the inner end of the main frame axle of the draft-frame." "9. The combination of a quadrant platform, hinged finger-beam, revolving rake, and a driver's seat supported by the main frame."

The original patent, No. 40,481, says that the improvements covered by it consist, 1st, in a peculiar construction and combination of frame, gearing, and double driving-wheels; 2d, in a device for affording protection to the main crank-shaft and strengthening the main frame; 3d, in the use of a movable tongue; 4th, in a device for permitting the finger-beam to turn freely on its own axis. There were only four claims in No. 40,481, one covering each of said four features, as follows: "1. The main frame and gear-frame A A, constructed as described, open at each end, when used in combination with shafts, gearing, and double driving-wheels arranged and operating substantially as and for the purposes specified." "2. The flange *a* cast or formed upon the gear-frame for the combined purposes of strengthening the latter and protecting the crank-shaft E, as hereinbefore explained." "3. The movable tongues K, adapted to be attached to the frame on either side of the wheel B′, and employed to support or raise the inner end of the beam." "4. Attaching the shoe to the drag-bar by a transverse swivel-joint, to permit the finger-beam to turn its axis to elevate or depress the joints of the fingers, or to fold the beam against the frame for transportation, when combined with bracing-guides *h′*, substantially as herein described."

Every one of the four claims of No. 40,481 — the iron frame cast in one piece, the flange, the movable tongue, and the transverse swivel-joint — is omitted from the reissue, and there are no corresponding claims. The rake-support is of the same form and in the same location as in No. 35,315, inclined and mounted on the platform, and not on the finger-beam, and the inner end of the platform is suspended on the main frame in the same way as in No. 35,315. The specification of No. 40,481 says: "On the inner side of the grain platform, near the heel of the finger-beam, is firmly mounted a post, R, which may incline over toward the main frame, as shown in Figure 1." This passage negatives the idea of mounting the post on the

finger-beam, and draws a distinction between the platform and the finger-beam as a location for the attachment of the post. The only mention of a driver's seat in No. 40,481 is this : " W represents the driver's seat." In the specification of the reissue the following language is found : " My first improvement consists in the combination, in a two-wheeled hinged-joint machine, of a driver's seat mounted upon the main frame, with a raking mechanism mounted upon the finger-beam, and rotating on a vertical axis, or one nearly so, substantially as hereinafter described, for the purpose of enabling the driver to ride upon the machine while the rake is in operation." Again, after describing the construction and arrangement of the rake or reel arms, which are the same as in No. 35,315 : " By this means the rake- and reel-arms will stand high enough above the draft-frame on the inner side of the machine, to move clear of the driver, who sits upon the machine in a seat, W, which is mounted upon the main frame, as shown, or in any other position on the frame that will give the greatest convenience and advantage from his weight and use of his hands in the management of the machine." Again : " From the foregoing description it will be seen that my invention enables me to combine in a self-raking harvester all the advantages derived from the two-wheeled hinged-joint machine, and still use a rake that turns about an axis, or revolves entirely about the same, and at the same time have the driver or manager ride upon the main or draft frame in such a position that his weight may aid in counterbalancing the weight of the rake and platform, and his hands may be conveniently employed for controlling the machine."

As to claim 1 of the reissue, although there is in No. 40,481 a driver's seat mounted on the main frame, it is not in such a position, nor can it be placed on the frame described in such a position, that the driver can ride on the seat while the appellant's rake is in operation. The appellees' raking apparatus has been above described. The appellant's raking apparatus is like that of No. 35,315 and of reissue No. 2224. If the appellant's raking apparatus were substituted in the appellees' machine for their raking apparatus, no person could ride on the driver's seat located anywhere on the frame of the appel-

lees' machine, as it is constructed, with the rake in operation. The seat shown in the drawings of No. 2490 is mounted on a portion of the frame which extends to the rear of the main axle, and the seat itself is shown as placed in the rear of said axle. Consequently, a driver located on said seat would add his weight on the same side of the main axle on which the raking apparatus is mounted, so that the idea of any counterbalancing weight from the position of the driver is negatived' by the arrangement. In the appellees' machine, the organization of the raking mechanism, before described, is such that the driver's seat may be located towards the front of the main frame, where he cannot be struck by the rake-arms, and where his weight will aid in counterbalancing that of the rake and the platform. No such organization of raking mechanism is shown or described in No. 2490, nor any such arrangement of seat relatively thereto. Moreover, claim 1 of No. 2490 requires that the raking mechanism be mounted on the finger-beam. Such a construction is not shown or described in No. 2490, or in No. 40,481. The raking apparatus in the appellees' machine is mounted directly on the finger-beam. The views hereinbefore expressed in connection with No. 2224 apply to No. 2490, so far as the mounting of the rake-post on the finger-beam and the arrangement of the raking mechanism are concerned.

As to claim 2, the raking apparatus is made an element in it, and the differences, before pointed out, between the two machines, in the construction of the raking mechanism and the arrangement and location of the rake-post, lead to the conclusion that the rake mentioned in claim 2 must be construed to be such a rake, and one so arranged, on a rake-post so mounted, as is shown and described in the specification, and thus does not include the appellees' raking mechanism or rake-post.

As to claim 6, the driving device must be limited to one substantially the same as that of the appellant. He has an extensible tumbling-shaft. The appellees have a chain belt, with links, before described. Their arrangement requires that the axis of the driving-wheel and the driven-wheel shall be substantially parallel, while No. 2490 requires that in the appellant's structure the axes of the two wheels, or the ends of

the axes, shall incline towards each other at a considerable angle. The tumbling-shaft, if used, must be used in such a location that the chain belt would not work in the same place. The two devices are not mechanical equivalents for each other. One could not be substituted for the other without a rearrangement of parts. Their only resemblance is that both communicate motion. The place where the device is arranged, namely, as the claim says, on the grain side of the inner drive-wheel or inner side of the draft-frame, imparts no patentable or inventive quality, in this case. That inheres only in the device.

In regard to claim 7, the appellant's raking apparatus and driving device are elements in it, and the observations before made apply, so that the appellees' raking apparatus and driving device are not covered by this claim.

Claim 9 includes the rake and the driver's seat, and, under the views before stated, the appellees' machine cannot be held to infringe that claim.

These conclusions make it unnecessary to consider any other question.

Decree, in so far as it dismisses the bill, is

*Affirmed.*