BRANDTJEN & KLUGE, Inc., v. JOSEPH
FREEMAN, Inc. (CHANDLER & PRICE
CO., Intervener).
No. 238.

Circuit Court of Appeals, Second Circuit.
April 5, 1937.

See, also, 296 U.S. 53, 56 S.Ct. 6, 80 L.
Ed. 39; 75 F.(2d) 472.

Pennie, Davis, Marvin & Edmonds, of
New York City (Dean S. Edmonds, John
Hoxie, and Charles W. Riley, all of New
York City, of counsel), for appellant.

Wallace R. Lane, of Chicago, Ill., John
F. Oberlin, of Cleveland, Ohio, Clarence
J. Loftus, of Chicago, Ill., and John F.
Ryan, of New York City, for appellees.

Before MANTON, L. HAND, and
SWAN, Circuit Judges.

MANTON, Circuit Judge.

This patent, No. 1,363,200, issued December 21, 1920, was originally applied for December 16, 1907. It is for a feeder for printing presses. Claims 11, 12, 18, 19, 24, 27, and 40 are here involved and relate solely to the feeding mechanism for platen printing presses of the Gordon type. Joseph Freeman, Inc., is a job printer and the intervener-appellee, the Chandler & Price Company, manufactures the press used by its coappellee, which is accused of infringement. The court below held there was no infringement.

After 1900, several automatic devices for feeding paper from stock pile to platen and into engagement with the usual gauge pins on the platen were successfully made and used in connection with Gordon presses. These were capable of feeding sheets of different sizes into desired positions on the platen and into contact with varying desired positions of the gauge pins. They were the Rice, referred to hereafter, Humana, Honigman, and Cheshire.

Cheshire was made from a patent which expired in 1932. The appellant's predecessor, Miller Saw Trimmer Company, who made the Cheshire feeder, purchased the Humana and the Honigman automatic feeders and then entered into negotiations and acquired the application for the present patent and prosecuted it to its issuance as a patent. The appellant's predecessor also acquired the Rice patent, No. 789,881, in May, 1905.

The Kluge feeder is one which the appellant was making and selling and was independently developed by it in 1919 without at that time any apparent knowledge of the Wells & Hunter application. An infringement suit was subsequently brought by the Miller Saw Trimmer Company under the Wells & Hunter patent, following its issue, and the Cheshire patent No. 1,145,405, against a user of the Kluge feeder, and a decree was entered in the Eastern District of Wisconsin sustaining both patents. While this cause was on appeal and before argument, on September 25, 1928, the appellant acquired the platen feed press business of the Miller Saw Trimmer Company including its patents, both United States and foreign, and thus brought about a settlement of that litigation.

The appellee Chandler & Price Company manufactured the Gordon type printing press and sold them with feeders.

The Wells & Hunter patent, to successfully operate, has means for supporting from beneath each single sheet of blank paper to be printed, during its entire travel from the stock pile to its point of engagement with the gauge pins on the platen and moving it from a fixed position adjacent the platen over a bridge and lengthwise of the platen while in surface contact therewith; and feed fingers press the paper

against the bridge and platen. The bridge and platen and the feed fingers must coact at all times to convey the paper by sliding it into printing position. All are essential parts of the "means for feeding sheets" as referred to in the patent. The operation is to slide the sheet from the stock pile by the feed fingers to the rollers by which it is grasped and moved forwardly to the conveyor tapes and by them carried into contact with the stock pins where it is aligned and positioned. When the platen is in open position and the stock pins have been moved downwardly out of engagement with the edge of the sheet and the bridge plate has been lowered into contact with the upper edge of the platen, the rubber engagers on the lower end of the feed fingers are forced downwardly in contact with the sheet so that it is pressed, first against the bridge plate, then the platen, and in surface contact with each. As these feed fingers are moved forwardly the sheet of paper is slid first over the bridge and then lengthwise over the platen pressing the paper into close sliding contact with the bridge and the platen until it comes in contact with the gauge pins. Thus throughout the feeding operation, the paper is supported from beneath and carried by and on the friction rollers, the conveyor tapes, the bridge plate and the platen, and from the time the feed fingers contact with the paper, the movement of the paper depends on the operation described. In order for the feeding mechanism of the patent to operate, it is imperative that the feed fingers, bridge plate, and platen coact and co-operate throughout the entire finger feeding operation without which it is impossible for the feed fingers either to lift or move the sheet, separate and apart from the bridge plate and platen. Operation is predicated upon these devices. Throughout it is a sliding action; sliding each sheet over a surface as described. Nothing in the patent teaches anything other than this method of feeding sheets from the stock pile to the gauge pins on the platen.

Much was said on the argument about the desirability of adapting the feed mechanism, to deposit a sheet in desired location on the platen. Whether guided or not by the dictates of good practice in securing proper pressure distribution, a printer, having a small sheet to print after running off a job while using a large sheet, would recognize and observe that the position of

the lower tympan gauge pin must vary with each job. In any job of printing on a platen press, the lower gauge pins will be attached to the tympan (platen surface) on a line which marks the position of the lower edge of the sheet which is being printed.

In the construction of the mechanism of the patent in suit, there is an adjustable stop which, by engagement with a projection on a swinging arm, operates the feed finger support and serves variably to limit the swing or throw of such support. This means for effecting this adjustment is a complicated mechanism. By reason of its construction, the finger supporting arm in the patented feeder always and of necessity starts from the same position which is fixed by the line of depressable stops wherewith the sheet is caused to register before it is slid over the surface of the bridge plate and platen. Accordingly it is only possible to vary the position of the sheet on the platen by stopping the sliding action of the friction feed fingers at different places or at a selected point in their path of movement. This is accomplished by the adjustable stop.

Each of the claims of the patent is predicated upon the structure and mode of operation disclosed. And necessarily such claims are limited to such disclosed structure and mode of operation or their clear equivalents. Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136. Of the claims sued on, only 18 and 19 relate to "any particular kind of mechanism for regulating the sheet-moving device" which is the basis of the charge of infringement. Claims 12 and 18 are typical and read:

"Claim 12: The combination with a printing press including a bed, a platen having an abutment thereon, and means for imparting to said platen a cycle of movement during the former part of which the platen is in a printing position and during the latter part of which the platen is in a sheet-receiving position, of means at the rear of said platen, and adjacent the upper edge thereof, for supporting a plurality of sheets, a sheet-moving member movable from a position clear of the upper edge of the platen lengthwise of the platen toward the lower edge thereof and back again, and cooperating with said abutment, and means for imparting the said movement to the said member during the latter part of the cycle of the platen."

"Claim 18: The combination with a press including a bed, a platen, and means for imparting to the platen a cycle of movement during the former part of which the platen is in printing position and during the latter part of which the platen is in sheet receiving position, of means for properly positioning the sheet on the platen, and means adjustable to accord with the location of said positioning means, for feeding sheets to the platen, said feeding means including a sheet moving member movable from a position clear of the upper edge of the platen lengthwise of the platen toward the lower edge thereof and' back again, and means for effecting such movement of said member during the latter part of the platen cycle."

All of the claims sued on are drawn to a combination of mechanical elements not a method or process. The first elements of each are well-known parts of the old platen printing press commonly called the Gordon type. In this type of press the platen stands still in order to facilitate the deposit of a sheet thereon in printing position. The printing position is determined by the gauge pins which serve the further necessary function of holding the sheet in place when the platen closes. Whatever novelty there be in the claims must be found in "means * * * for feeding sheets" or "a sheet moving member."

The appellee's feeder was designed to feed sheets to the platen of a platen press of the Gordon type. It has a table for the stock of blank sheets to be fed to the machine mounted at the rear and entirely clear of the platen without any bridge plate. In each, means are provided for shifting the feed table so as to bring the front edge of the pile at different distances from the edge of the platen when it is in open position, and in each the shifting forward and backward of the stock pile determines the position to which the sheet is fed on the platen in engagement with the gauge pins located lower or higher on the platen. There is a cam actuated rocker arm carrying at its upper forward end a suction device in which the adjustable suckers are mounted. This arm and its attached suckers move forward and backward exactly the same distance regardless of the desired location of the sheet on the platen. The stroke of the rocker arm never varies in these machines. The location from which the sheet is picked up from the table, whether near the forward edge or back from it solely determines

its deposited position on the platen. There is a suction pump connected to the hollow feeder rocker arm which creates the suction at the suckers for bodily lifting each sheet from the top of the stock pile. The front pair of suckers grasp the sheet which is to be fed near its front edge and together with the other suckers bodily lift the sheet, and carry it upwardly and forwardly over the intervening space between the stock pile and platen and over the platen wholly out of contact therewith and other supporting surface to a position adjacent the usual gauge pins, which is where it is released to be engaged and retained in place by the gauge pins.

The arrangement of sucker tips and their adjustable supports is substantially the same. Sheets of various sizes are fed to, the most desirable printing position on the platen, namely near the center, and the adjustable sucker means enable this result to be accomplished for different sized sheets.

The appellees' feeder resembles the feeder disclosed in the Rice patent, No. 789,881 applied for October 7, 1903, issued May 16, 1905, and both differ from the patent in suit.

Rice's machine was exhibited in California in 1903 or 1904 and was known to those in the art. It was later purchased by the appellant's predecessor. A comparison of it with the foregoing description of the appellees' feeder shows that the platen is similarly constructed. The appellees' machine has the same method of operation as Rice. The parts are the same save in details with which we are not here concerned. In the Rice patent, as in appellees' feeder, the suction head with its sucker tips carried by the swinging arm must necessarily impart thereto the same invariable amplitude of movement. Where it becomes desirable, as by change in the size of the sheet to be fed, the latter should be deposited at different distances from the lower edge of the platen, and it is only possible to' change such position by correspondingly changing or shifting the location of the stack of blank sheets. To this end, the stack is bodily adjusted toward· and away from the platen, with the result that the Rice sheet feeding path is always the distance from the starting point of the front edge to the point of deposit of such edge from the platen and never varies.

The Rice patent disclosed specific means for adjustably locating the feed stack by having guides or stops or gauges on the feed bar to hold and guide the paper in proper

position. Such guides or gauges are also desirably made adjustable to receive different sizes of sheets and any usual expedient may be adopted for this purpose.

The sucker tips are adjustable. Whatever its extent and whether telescopically or otherwise provided, the adjustment serves so as to shift the position of the sucker tips with respect to the arm as may be required in order to bring them in proper contact with the top sheet of the stack pile as the location of the latter is shifted. The capacity of adjustment of the position of the sucker tips, relatively to the swinging arm which carries them on appellees' device, is fully disclosed in the Rice patent. The Rice patent contemplates that the feeder shall operate for different size sheets by having the sucker tips adjustable.

The appellant's expert attempted to distinguish between the patent's feed mechanism and that of Rice as to the capacity of each to locate the sheet where desired on the platen, but a consideration of such distinction amounts to no more than reciting what the operator may have in mind as the objective he is accomplishing when he adjusts the telescopic sucker tips and the feed head of the Rice machine. If what he is doing is adjusting the sucker tips in relation to the gauge pins, then he is adjusting such tips in relation to them. And if, disregarding the fact that the gauge pins define the position of the sheet on the platen, he adjusts such telescopic sucker tips of the Rice device in relation to the lower edge of the sheet of paper, then the adjustment is made with respect to the latter. But the adjustment made is identical in both cases, the resultant effect is identical, and the means employed to effect such adjustment in the case of the Rice feeder consists of the same telescopic sucker tips or their equivalent in both cases.

Appellees can be held to infringe only if they use a combination of the same elements, co-operating in accordance with the same principle and that infringement cannot be predicated upon the fact that the appellees secure a similar result by other means.

The appellees' machine does not infringe. It has no element which corresponds to that element referred to in each claim sued on, expressed in the varying verbiage of the specific feeding means, including "a sheet moving member movable from a position clear of the upper edge of the platen lengthwise of the platen toward the lower edge thereof and back again." This means is referred to in the specification of the patent as "one of the essential features of the present invention" and "involves the sliding of the blank sheet to be printed on the tympan and to its printing position" by means of fingers shown and described, which press against the paper and move it in surface contact with the bridge and the platen. Appellees' machine has no element that operates in any such manner or produces the result by sliding feeding sheets from a stock pile on to the platen and to its printing position in the way the appellant has limited each of his claims to this feeding mechanism, and there is no equivalent in the appellees' feeder. Appellees' feeder cannot infringe any claim which has this limited means element in it. In appellees' machine the sheet is picked up bodily by the sucker tips, carried by them above and over the platen, and deposited at the desired gauge pin position without the platen or other supporting surface in any way forming part of the conveying means. This is the method also in the Rice patent. The contention that such means used is the equivalent of the conveying means in the patent in suit is in effect saying that the conveying means shown by the Rice patent is an infringement.

Claims 18 and 19 of the patent in suit must also be read as containing means for adjusting the length of the throw of the arm for feeding sheets to different positions on the platen. This is the only way in which the appellants' feeder by reason of the essential features of its construction can be adjusted thus to feed the sheets. In the appellees' machine there are no means which can be construed as a mechanical equivalent of the instrumentality of the appellant's patent for adjusting a throw of the arm. In the appellees' feeder, the throw of the arm and the suction head with adjustment sucker tips cannot be varied. Nor can the appellant successfully maintain its position that in attempting to establish infringement by the use of any adjustable means for varying the reach of the sucker tips, it is the equivalent of adjustable means of claims 18 and 19 of the patent in suit. The appellant's argument rests upon the fallacy that such adjustment of the sucker tips is in accord with the gauge pins. When the telescopic adjustment is used to adjust the suction head to a different size sheet in appellees' feeder, it

serves the function simultaneously of enabling the sheet to be fed to a desired position on the platen with the lower edge of the sheet coinciding with the corresponding gauge pin line. The capacity of the adjustable sucker tips to serve the two functions is inherent in the structure.

Appellant argues that the cross bar of the Rice unit may be adjusted. But if that is so, any angular adjustment of the cross bar merely varied the reach of the sucker tips substantially the same as in the Rice patent. This in no wise varies the throw of the rocker arm. The throw in both cases would be the same.

There is no infringement proved in the use of appellees' feeder. Appellees do not use the sheet feeding means or mechanism for regulating the sheet feeding device of the patent in suit.

Decree affirmed.