Charles F. HANSEN, Plaintiff,

v.

Ottis M. COLLIVER and Floyd E. Fuller, Defendants.

Civ. No. 7399.

United States District Court
N. D. California, N. D.

March 25, 1959.

Townsend & Townsend, San Francisco, Cal., for plaintiff.

William H. Atkinson, San Francisco, Cal., for defendants.

HALBERT, District Judge.

This action has been brought by Charles F. Hansen, (hereinafter referred to as plaintiff) as owner of United States Letters Patent Number 2,552,673, issued May 15, 1951, against Colliver and Fuller (hereinafter referred to as defendants), jurisdiction being founded upon Title 28 U.S.C.A. § 1338(a). It is alleged in the complaint that a device, constructed and used commercially by defendants, infringes the Hansen patent, and plaintiff, having waived an accounting for damages, prays solely for injunctive relief. Defendants, by their answer, deny any infringement and contend that, in any event, the Hansen patent has been anticipated, and so is void. In addition, the defendants counterclaimed for damages alleged to have resulted from notices sent by plaintiff to defendants' customers alleging infringement of the Hansen patent by the customers, which resulted in defendants being unable to find purchasers for the product of their device.

May 15, 1951          C. F. HANSEN          2,552,673
MEANS FOR INTERCHANGING CORES IN WIRE ROPES
Filed July 14, 1950

Fig. 1

Fig. 2

Fig. 3

Fig. 4

*Inventor*

*Charles F. Hansen*

By

*Attorneys*

EXHIBIT "A"

The Hansen patent involves a machine which enables short lengths of preformed wire cable to be economically recored. It appears that the prior art in the field involved expensive and cumbersome machines which required considerable setup time. Such a mechanism required considerable set-up time and so was impracticable, in an economic sense, for recoring short lengths of cable. The machine evolved by Hansen (See: Exhibit "A"), is simplicity itself. It consists of a fixed pin, which is passed through an opening created in one end of a short length of cable, the opening being created by twisting the cable against the lay of its strands. The pin prevents the pre-formed cable from closing and resuming its original shape. Stress is then applied by means of a swivel, pulling the cable past the pin, the helical lay of its strands forcing it to revolve about the pin. As the cable rotates in this fashion, the old core is forced out as it meets the pin, emerging through the gap in the strands at that point. Through a hole in the pin a new core is inserted. As the cable beyond the pin resumes its original shape, it closes around and draws the new core with it.

It appears that Hansen utilized his machine to re-core, with a steel core, used cable, manufactured with a hemp core, and sold the resultant product to a segment of the logging industry. While so engaged, Hansen employed defendants to operate the machine. During their employment defendants conceived their device, which they suggested to Hansen as an improvement, but which Hansen refused to consider. After leaving Hansen, the defendants constructed their device and commenced re-coring cable, which construction and operation is in issue here.

■■ Initially this Court is impelled, in view of the essential simplicity of the Hansen patent in concept and construction, to consider the possibility that the patent lacks "invention". While there is a *prima facie* presumption, arising from the issuance of letters patent, that all requisite elements of patentability exist, including invention (Palmer v. Village of Corning, 156 U.S. 342, 15 S.Ct. 381, 39 L.Ed. 445, and Miller v. Eagle Mfg. Co., 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121), this presumption is not in any sense conclusive (Gardner v. Herz, 118 U.S. 180, 6 S.Ct. 1027, 30 L.Ed. 158). Defendants were entitled, but did not, allege and put in issue the non-statutory defense of lack of invention (Powers-Kennedy Contracting Corporation v. Concrete Mixing & Conveying Co., 282 U.S. 175, 51 S.Ct. 95, 75 L.Ed. 278, and Richards v. Chase Elevator Co., 158 U.S. 299, 15 S.Ct. 831, 39 L.Ed. 991). No admissible evidence by either party was offered in this regard. Invention, however, cannot be established by the failure of the parties to raise and consider the issue (cf. Allbright-Nell Co. v. Autosteam Process Co., 7 Cir., 70 F.2d 959, and Daniels v. Permutit Co., D.C., 44 F.Supp. 74, reversed on other grounds 3 Cir., 137 F.2d 823).

■■ Invention is, perhaps, the most essential element of patentability. It is the quality which carries a device beyond that level which might be obtained through the exercise of no more than mechanical skill and raises it to the legal stature of patentability (United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114). It follows then that an absence of invention would defeat an action for infringement at its inception, and it is, therefore, proper for this Court to raise and consider the issue *sua sponte* (Slawson v. Grand Street, P. P. & F. R. Co., 107 U.S. 649, 2 S.Ct. 663, 27 L.Ed. 576).

■ The test in this regard has received extended discussion in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, although there the Supreme Court was specifically concerned with a combination patent. The concept embodied in the Hansen patent has been long and carefully considered in the light of that discussion. Such study has convinced the Court that, obvious as it appears at this stage of the proceeding, the development of the Hansen patent did in fact require the exercise of inventive-

ness, rather than mechanical skill only, and so properly forms a valid basis for a subsisting patent.

Raised by defendants in their answer was the defense of anticipation. Substantially identical testimony was elicited in that regard from two witnesses, one Drew and one Enzensperger. They both testified that during the World War II they were employed at the same shipyard where they served as members of a Labor-Management Committee whose purpose was to consider for merit awards employee suggestions aimed at increasing and furthering production. Drew, a patent agent, had the further responsibility of determining the patentability of such suggestions, and of obtaining a patent where that was indicated.

Both witnesses testified that during the early years of the War (They were unable to set the time more precisely.) they had observed a mechanism in one of the yard's rigging lofts which was used to re-core short lengths of wire cable. The mechanism was described as a vertical timber with a spike driven into its flat top. On opposite sides of the spike were fastened inverted U bolts. Cable, placed over the spike, was lead through the U bolts and then drawn past the spike by means of a swivel, enabling the old core to be removed and a new core inserted in much the same fashion as the Hansen patent.

Both Drew and Enzensperger had viewed this mechanism independently, but neither was certain whether or not it had been submitted to their Committee or, if so, whether it had received an award. A check could not be made through the Committee records, as the records had been destroyed several years before the trial.

It has been stated that prior use must be proven beyond a reasonable doubt (Hotel Security Checking Co. v. Lorraine Co., 2 Cir., 160 F. 467, 24 L.R. A.,N.S., 665). While the facts of the cited case do not support such an extreme statement relative to the required burden of proof, it does appear that, to overcome the presumption of priority of invention raised by the issuance of letters patent, considerably more than a bare preponderance of the evidence is required (Radio Corporation of America v. Radio Engineering Laboratories Inc., 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163).

The problem raised by oral testimony in this area has been the subject of much discussion.

"In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent * * * has been attacked by the testimony of witnesses who imagined they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny." The Barbed Wire Patent (Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.,) 143 U.S. 275, at pages 284 and 285, 12 S.Ct. 443, 447, 36 L.Ed. 154.

Conscious of these considerations, courts have held that while the testimony of a single witness may, in connection with other circumstances, be sufficient to prove anticipation (Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610), some supporting physical evidence is generally required (Food Machinery Corp.

v. Pacific Can Co., D.C., 66 F.Supp. 109). Even then corroborating physical evidence must be examined carefully, in conjunction with all aspects of the testimony and conduct of the witness, to insure that the testimony and the conduct are consistent with all physical evidence (American Bell Tel. Co. v. American Cushman Tel Co., 7 Cir., 35 F. 734, 1 L.R.A. 60; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; and Webster Loom Co. v. Higgins, 105 U.S. 580, 26 L.Ed. 1177). This consistency is of even more importance where the testimony is elicited from a witness with an interest, financial or otherwise, in the case (Deering v. Winona Harvester Works, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153; Clark Thread Co. v. Willimantic Linen Co., 140 U.S. 481, 11 S.Ct. 846, 35 L.Ed. 521; and Parker v. Stebler, 9 Cir., 177 F. 210).

Here the testimony of the two witnesses was uncertain as to anything but the actual form of the mechanism in the rigging loft, and there was no physical evidence substantiating their description of it. In addition, Drew was engaged at the time of trial of the case at bar in a proceeding before the patent office seeking a patent for defendants' device. Taking all of these factors into account, it must be held that under the circumstances here existing the testimony of Drew and Enzensperger is insufficient to show prior use and anticipation of the Hansen patent (Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049).

As the Hansen patent is valid and subsisting, it must be determined whether defendants' device (See: Exhibit "B"), in its construction and operation, is such as to infringe the patent. A comparison between it and the Hansen patent makes it clear that the defendants have utilized the invention of plaintiff. It would baffle the ingenuity of the most skilled expert to show a substantial difference between the two machines. The essence of both is a pin or rod about which is drawn a length of cable by means of a swivel. To this unskilled

Court, it appears that defendants' device is superior in its simplicity, doing away, as it does, with tubular guide, but this cannot relieve defendants from the charge of infringement, as the two machines are substantially alike (Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147, and see Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672, adhered to in part and reversed in part 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097).

There remains to be determined whether defendants' device, which infringes the Hansen patent in substance, also infringes the patent as a matter of law. This problem arises from, and is confined to, an examination of the first claim, the only one in issue, which reads as follows:

"Means whereby a used wire rope with a fibre core may be partially transformed by removing said fibre core and replacing same with a new metal core comprising a stationary support having a guide through which said rope is drawn by force applied to said rope, and relatively fixed means on said guide for momentarily unwinding and spacing limited portions of the strands sufficiently that available spaces are provided between the thus distended strands for extracting and completely withdrawing said fibre core, and, while the spaces are available, inserting and feeding said new substitute core for the displaced fibre core."

The function of the claim is to define the scope of the protection sought by the patentee (General Electric Co. v. Wabash Appliance Corporation, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; Smith v. Snow, 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721; and Western Electric Mfg. Co. v. Ansonia Brass & Copper Co., 114 U.S. 447, 5 S.Ct. 941, 29 L.Ed. 210). By means of this requirement the public is apprised of the extent of the monopoly asserted, and competitors are put on notice as to those things which they are

810

EXHIBIT "B"

bound to avoid (Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 59 S. Ct. 8, 83 L.Ed. 34, and White v. Dunbar, 119 U.S. 47, 7 S.Ct. 72, 30 L.Ed. 303). In this fashion the claims alone (Compare Graver Tank & Mfg. Co. v. Linde Air Products Co., supra, adhered to in part and reversed in part on other grounds 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, and Universal Oil Products

Co. v. Globe Oil & Refining Co., 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399, with Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, and Byron Jackson Co. v. Wilson, D.C., 43 F.Supp. 392) delineate and set the measure for the rights of the patentee (Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132), and serve the further purpose of conveying to the courts exactly that which they are obliged to construe (The Incandescent Lamp Patent, 159 U.S. 465, 16 S.Ct. 75, 40 L.Ed. 221).

■■■■ The presumption is that a patentee, having the right to claim his whole invention, intended to do so (Winans v. Denmead, 15 How. 330, 56 U.S. 330, 14 L.Ed. 717). In construing the extent of a claim, a Court must balance this presumption against the important fact that claims are prescribed in order to make the patentee define precisely what his invention is. Where a claim is explicit the patentee is bound thereby (Mackay Radio & Telegraph Co. v. Radio Corp. of America, 306 U.S. 86, 59 S.Ct. 427, 83 L.Ed. 506; Keystone Bridge Co. v. Phoenix Iron Co., 95 U.S. 274, 24 L.Ed. 344; and Haines v. McLaughlin, 135 U.S. 584, 10 S.Ct. 876, 34 L.Ed. 290). The reach of the claim operates as a disclaimer of all patentable matter in excess thereof (Sontag Chain Stores Co. v. National Nut Co., 310 U.S. 281, 60 S.Ct. 961, 84 L.Ed. 1204), and any remainder becomes an abandoned residue (Underwood v. Gerber, 149 U.S. 224, 13 S.Ct. 854, 37 L.Ed. 710), which is open to appropriation by all (McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800).

■■■■ A claim, however, does not limit the patentee to the exact mechanism described, leaving the public at liberty to construct substantially identical copies of the patented machine by varying its form or proportions (White v. Dunbar, 119 U.S. 47, 7 S.Ct. 72, 30 L.Ed. 303), or to adopt mechanical equivalents for the machine, or portions thereof (Hobbs v. Beach, 180 U.S. 383, 21 S.Ct. 409, 45 L.Ed. 586). It should be noted, however, that in this regard a claim can-

not be given an interpretation so broad as to cover the function of the article patented. This would extend protection against every possible article with a like function (Union Switch & Signal Co. v. Kodel Electric & Mfg. Co., 6 Cir., 55 F. 2d 173). Further, this would grant a monopoly as against all contrivances which might accomplish the same result and yet owe nothing to the patentee (Minerals Separation v. Butte & Superior Mining Co., 250 U.S. 336, 39 S.Ct. 496, 63 L.Ed. 1019, and Royal Typewriter Co. v. Remington Rand, Inc., 2 Cir., 168 F.2d 691).

■■■■ Here defendants' device has unquestionably appropriated the inventive idea sought to be embodied in the Hansen patent, and the first claim of that patent should be construed so as to protect the patentee if the language used will fairly permit of such construction (United Shoe Machinery Co. v. Mathey, D.C., 43 F.2d 617). In its application of the interrelated rules considered above, this Court is, of course, bound by the exact words of the claim. The claim not being ambiguous, it neither requires nor permits any construction (General Motors Corporation v. Rubsam Corp., 6 Cir., 65 F. 2d 217, certiorari denied 290 U.S. 688, 54 S.Ct. 123, 78 L.Ed. 593).

The claim explicitly requires a " * * * guide through which said rope is drawn * * * ". Without a guide the Hansen patent, as described, would be inoperable. As a result, the guide may not be disregarded (Louis Schopper & Foreign Paper Mills v. Star Brass Mfg. Co., D.C., 34 F.2d 664), but must be held to be an essential portion of the claim (Harris v. Ladd, 8 Cir., 34 F.2d 761). As the Hansen patent is not complete without the inclusion of a guide through which rope may be drawn, the claim must be limited to the device described (Compare: Identification Devices Inc. v. United States, 89 Ct.Cl. 141, certiorari denied 308 U.S. 570, 60 S.Ct. 84, 84 L.Ed. 478, with Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 71 F.2d 539, certiorari denied 293 U.S. 625, 55 S.Ct. 345, 79 L.Ed. 712), or to one which

utilizes clear equivalents (Brandtjen & Kluge v. Joseph Freeman Inc., 2 Cir., 89 F.2d 25, and Martin v. United Aircraft Corp., D.C., 32 F.Supp. 367).

At the trial, plaintiff introduced expert evidence that the table top of defendants' device was equivalent to the guide described in the first claim of the Hansen patent, and also contended that cable passed "through" the table top in the same fashion that one may walk "through" a park. While an inventor is allowed considerable latitude in the wording of a claim (Bianchi v. Barili, 9 Cir., 168 F.2d 793, and Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658), this argument is more interesting than persuasive when it is weighed against the explicit language of the claim. The two tests of equivalency are identity of function and substantial identity by way of performing that function (Graver Tank & Mfg. Co. v. Linde Air Products Co., supra, and Union Paper-Bag Machine Co. v. Murphy, 97 U.S. 120, 24 L.Ed. 935). The doctrine, while premised upon the necessity for protection against substitution of one element of an invention (Thrall v. Poole, C.C., 89 F. 718), varies in its degree of protection with the degree of invention embodied in the patent for which that protection is sought (Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122).

While mindful of the general rule that a claim, and its terms, should be construed where possible so as to sustain and protect the real invention, that is, the substance of the patent (Paul E. Hawkinson Co. v. Wilcoxen, 6 Cir., 149 F.2d 471), the Court may not enlarge the patent beyond the scope of that which the inventor claimed and the patent office allowed. This is true even though the patentee may have been entitled to something more than the words he has chosen will include (West Disinfecting Co. v. United States Paper Mills, D.C., 44 F.2d 790, modified on other grounds, 3 Cir., 44 F.2d 803, certiorari denied 283 U.S. 836, 51 S.Ct. 485, 75 L.Ed. 1448). As the Hansen patent is not a pioneer patent, greatly advancing an industry (Compare: Boyd v. Janesville Hay-Tool Co., 158 U.S. 260, 15 S.Ct. 837, 39 L.Ed. 973), the doctrine of equivalents cannot extend the language of the Hansen claim to embrace defendants' table top as a guide, through which the cable may pass (See: Hoffheims v. Russell, 107 U.S. 132, 1 S. Ct. 570, 27 L.Ed. 332).

Finally, there are two motions submitted at the conclusion of the trial which must be ruled upon.

The first motion, referred to earlier, concerns defendants' counterclaim, and is a motion by plaintiff to strike the same as not proven. It appears that the letters sent to defendants' customers alleged that the recipient was guilty of acts of patent infringement, ordered the recipient to cease and desist, and to account for all profits and any damages accruing by reason of such infringement. While a patentee is entitled to use all lawful means to protect his patent (A. B. Farquhar Co. v. National Harrow Co., 3 Cir., 102 F. 714, 49 L.R.A. 755), the conduct of plaintiff and his attorneys in leveling charges of infringement against customers of defendants in this case finds no legal justification (American Ball Co. v. Federal Cartridge Corp., 8 Cir., 70 F.2d 579, 98 A.L.R. 665, and Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371). While evidence was introduced by defendants tending to show that these letters resulted in some monetary loss, the extent of that loss, if any, was not shown with sufficient certainty to allow defendants' counterclaim in any amount. Under these circumstances, plaintiff's motion will be granted.

The second motion, also plaintiff's, is to strike the testimony of defendants' expert witness. The motion appears to be based upon the fact that defendants' expert was a patent agent, not an attorney. The motion is without merit. Expertise in the patent field is not conferred solely by membership in a Bar Association. A patent agent, when properly qualified, may be an expert witness just as readily as an attorney.

It Is, Therefore, Ordered that plaintiff Hansen's patent, while valid, is not infringed by the construction or use of defendants' device.

It Is Further Ordered that plaintiff's motion to strike defendants' counterclaim as not proved be, and the same is, hereby granted.

And It Is Further Ordered that plaintiff's motion to strike the testimony of expert witness Drew be, and the same is, hereby denied.